# CASES DETERMINED

IN THE

# St. Louis and Kansas City

## COURTS OF APPEALS.

### MARCH TERM, 1885.

Loüise Brohammer, Appellant, *v.* Charles Hoss, Respondent.

#### March 17, 1885.

Equity—Reformation of Written Contract.—Equity will not reform a written contract, on the ground of mutual mistake, unless the evidence of mistake is clear and convincing.

Appeal from the St. Louis Circuit Court, Thayer, J. *Affirmed.*

A. J. P. Garesche, for the appellant.

Gottschalk & Bantz, for the respondent.

Thompson, J., delivered the opinion of the court.

This is a suit in equity, the object of which is to reform a written lease so as to insert therein a covenant on the part of the defendant, the lessee, to pay the taxes assessed against the property during the term. The court entered a decree for the defendant.

We need not go into the learning upon the subject of reforming contracts in equity on the ground of mutual mistake. It is sufficient for the purposes of the case to say that it is a well understood rule that written contracts which parties have made and signed, cannot be reformed at the suit of one of them on the ground of mutual mistake in drawing them, except upon clear and

cogent evidence that there was such a mutual mistake. The evidence in the case has been gone over carefully, and we might stop by saying that it is conflicting upon the point in issue, whether the lease as drawn up, failed, by omitting a clause requiring the defendant, the lessee, to pay the taxes, to express the real agreement of the parties. The testimony given for the plaintiff, apparently credible, tends to show that there was such a mistake, and the testimony given for the defendant, equally credible, so far as appears, tends to show that there was no such mistake.

It appears that, on the 4th of April, 1881, after some negotiations between Joseph Brohammer, father of the plaintiff, acting as her agent, and the defendant, the following memorandum was drawn up and signed:

"APRIL 4, 1881.

"Mr. J. Brohammer agrees to lease the property on the corner of Third Street and Chouteau Av., to Mr. Charles Hoss for the term of ten years, at a rent of forty dollars a month at the rate of 480 dollars a year and Mr. Hoss pay taxes and keep the same in good order.

"JOSEPH BROHAMMER,
"CHARLES HOSS."

It also appears that in the lease afterwards drawn up and signed there was no covenant, in conformity with this agreement, that the lessee should pay the taxes. The plaintiff's evidence tends to show that though the lease was read to her by the notary before she signed it, yet she was not aware of the omission of this stipulation; and the notary testified that, though the plaintiff inquired carefully about the provision as to repairs, nothing was said by her about any provision as to the payment of taxes. The plaintiff's father also testified that the memorandum of April 4th was drawn up and signed after a distinct agreement that the lessee should pay the taxes, and that the payment of taxes was included in every proposition which he had made to the lessee in the course of the negotiations. A witness for

the plaintiff, Mr. Stout, had also acted for the plaintiff in the negotiations, and his testimony tended to show that the understanding was that the lessee should pay the taxes.

On the other hand, the defendant's testimony was to the effect that when he signed the memorandum of April 4th, he had not given much attention to its contents, knowing that a formal lease would thereafter be executed; and that he only agreed to pay $40.00 a month rent and repairs inside and out. Justice Raum also testified for the defendant to the effect that in April or May, 1881, Mr. Brohammer (meaning the plaintiff's father) and the defendant called on him and showed him the lease to see if it was correctly drawn; that he told them that it was perfectly executed if it contained the conditions which they had agreed to; and that seeing that it was a ten years' lease he remarked that there was no clause about taxes; that Mr. Brohammer would have to pay them; and that Mr. Brohammer then remarked, "that is all right." This conversation took place after the execution of the lease. It does not appear whether or not the lease had been delivered at the time this conversation took place, and the inference would be that it had not been. This evidence was objected to for irrelevancy and incompetency, but it is clear that it was both relevant and competent. Mr. Brohammer was acting as his daughter's agent in the matter, according to the plaintiff's testimony, and one of the questions in dispute was, what his understanding of the contract was. The plaintiff in her testimony admitted, on cross-examination, that her father told her that Justice Raum told him that she had to pay the taxes. Just when he told her this, does not appear, but she had been testifying about the execution of the lease; said her father and Mr. Stout told her it was all right, and so she signed it. Her testimony then continues: "I relied on what they said. My father next told me that Justice Raum told him I had to pay the taxes." It would seem from the context that her father told her this on the

occasion of her executing the lease. Mr. Brohammer, on cross-examination, also said : "Justice Raum, at his office, did tell me that I would have to pay the taxes ; but I do not remember that he said that it was not in the lease that Hoss must pay all the taxes." This evidently referred to the conversation with Justice Raum at the time referred to by the latter in his testimony, when Mr. Brohammer and the defendant submitted the lease to him for his opinion as to whether it was correctly drawn. This, in connection with the other testimony, leaves it entirely in doubt whether there was any mutual mistake in omitting from the lease a covenant on the part of the lessee to pay the taxes.

It follows that the judgment of the circuit court must be affirmed. It is so ordered. All the judges concur.