LINCOLN TRUST COMPANY et al., Respondents, v. NATHAN et al., Appellants.

St. Louis Court of Appeals, January 22, 1907.

1. **RES JUDICATA:** *Identity of Cause of Action: Equity.* Issues that were tried or might have been tried in a former action may be shown by the entire record or by parol evidence and the judgment therein is conclusive on both parties as to all matters between them. This rule applies as well in equitable as in legal actions.

2. ———: ———: ———. A lessor sued for rent and the lessee, defendant, answered alleging a breach of the contract of lease by the plaintiff and praying for a rescission and a recovery of certain rents already paid. The judgment was for defendant. This did not bar a subsequent action by the lessor to recover certain insurance money collected by the lessee for fixtures destroyed by fire, under a covenant in the lease providing such fixtures should become the property of the lessor on the termination of the lease or in case of fire the insurance money collected on it should be paid the lessor. Plaintiff had no cause of action

Lincoln Trust Co. v. Nathan.

to recover such rents until the lease was rescinded and could not therefore have included the claim in the former suit, and it was not necessary for him to set it up in reply and thus bring it in issue in the former suit.

Appeal from St. Louis City Circuit Court.—*Hon. Warwick Hough,* Judge.

AFFIRMED.

*R. E. Rombauer* for appellants.

The plea of *res adjudicata* applies, except in special cases, not only to points upon which the court was actually required by the parties to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time.  Henderson v. Henderson, 3 Hare loc. cit. 114; Railroad v. Levi, 17 Mo. App 507; Shelbina Hotel Assn. v. Parker, 58 Mo. 327; Railroad v. Traube, 59 Mo. 355; Comstock v. Davis, 51 Mo. 569; Greenbaum v. Elliott, 60 Mo. 25; Caldwell v. White, 77 Mo. 471.  This is not only the English rule and the rule in this State, but generally the tendency of the American cases is to regard all the issues which might have been raised and litigated in any case to be as completely barred as if they had been directly adjudicated and included in the verdict.  21 Am. and Eng. Ency. of Law, 216 and 217 and note.

*George W. Lubke* and *George W. Lubke, Jr.,* for respondents.

When a plea of *res adjudicata* is interposed, the court must look to the entire record of the former case to determine whether the particular right asserted in the new action was adjudicated or not in the former one, and if it appears that such right was not adjudicated

therein, the plea is not well made.  The scope created by the first judgment cannot be extended beyond the questions and issues necessarily determined by it.  St. Joseph v. Railroad, 116 Mo. 643; Short v. Taylor, 137 Mo. 517; Bell v. Hoagland, 15 Mo. 360; Clemens v. Murphy, 40 Mo. 121; Wright v. Salisbury, 46 Mo. 26; Wells v. Moore, 49 Mo. 229; Spradling v. Conway, 51 Mo. 51; Sweet v. Maupin, 65 Mo. 65.

BLAND, P. J.—Fred C., Joseph J., and Otto L. Mersman were trustees under their father's will, and as such were seized in fee of a lot of ground with a four-story, stone-front, brick building thereon, in block 94, city of St. Louis, Missouri, and known as Nos. 814, and 816 North Broadway.  On December 29, 1892, these trustees leased said premises, in writing, for a term of ten years (expiring December 31, 1902) to Henry J. and Isaac Nathan at a rental of six hundred dollars per month, payable monthly in advance.  The Nathans were given the privilege of assigning the lease, they, however, to remain liable for the rent and to perform all other covenants of the lessees.  A short time after the lease was executed, the Nathans formed, and incorporated, the Peoples House Furnishing Company, and in August, 1893, assigned the lease to this corporation.  Joseph J. and Otto L. Mersman resigned their offices as trustees under their father's will, and the Lincoln Trust Company, a corporation, and Arthur A. B. Woerheide were appointed their successors, by the St. Louis Circuit Court.  They duly qualified and entered upon their duties in 1897.  One of the covenants in the lease, the one out of which this suit arose, is as follows:

"And as a further consideration for the leasing of said premises the said parties of the second part agree to expend and lay out for elevators, heating apparatus and lighting apparatus and other fixtures, in the interior of

122 App—21

said buildings, to be used therein during the term of said lease, a sum of money which shall not be less than four thousand dollars, and which said fixtures and elevators, and heating and lighting apparatus shall belong to the said parties of the second part until the expiration of said lease, when the same shall become the sole property of the said parties of the first part; but in the event of the loss or destruction of said property during the life of this lease, the insurance money which shall be recovered for their loss shall be devoted for the purpose of replacing said elevators, heating and lighting apparatus and fixtures in a new building to be erected upon the aforesaid lot of ground, or a repaired building thereon; and said elevators, apparatus and fixtures shall be kept insured by said parties of the second part to the amount of four thousand dollars."

The lessees went into possession of the leased premises and occupied them until the fourth day of February, 1900, when they were totally destroyed by fire. They paid the rent for the months of February and March, 1900. Prior to the fire, defendants expended about four thousand dollars for installing elevators and heating and lighting apparatus in the premises. They insured these fixtures against loss by fire, in the sum of four thousand dollars, which insurance was in force at the time of the fire and of which defendants collected thirty-nine hundred and eighty dollars. The suit is in equity to compel defendants to account for and pay over the thirty-nine hundred and eighty dollars insurance money collected by them.

Two defenses are pleaded in the answer, one that plaintiffs, under the covenant of the lease, are not entitled to the insurance fund; the other, that the matter was, or could, and should have been adjudicated in a prior suit between the same parties. It was provided in the lease, that in case of the destruction of the building during the life of the lease, the lessors or their suc-

cessors would immediately erect a new building on the premises, of the same size, dimensions, strength and arrangement as the building let, and have the same ready for occupancy by the lessees as soon as possible after the destruction of the building originally let. Relying on this covenant, defendants paid the rent for March, but after March, being of opinion that plaintiffs were not diligently performing the covenant to rebuild, notified them they had acquired other premises and rescinded the lease. In May, 1900, plaintiffs commenced an action in the St. Louis Circuit Court, against defendants, to recover the rents of the leased premises for the months of April and May, 1900. To this suit defendants filed an answer, alleging a breach of the lease by plaintiffs, in failing to speedily erect a new building as they had covenanted to do, and prayed for a cancellation and surrender of the lease, and also for a return of the twelve hundred dollars rent paid plaintiffs for the months of February and March, 1900. The reply was a general denial.

It appears that on the trial of the case, plaintiffs offered to introduce in evidence the fact that defendants had collected thirty-nine hundred and eighty dollars insurance on the fixtures, but the evidence was excluded, and in the finding of facts and judgment of the circuit court this insurance money is nowhere mentioned. Defendants were successful in their defense. The court entered a decree cancelling the lease and ordering plaintiffs to surrender it, and decreed that plaintiffs should return to defendants the twelve hundred dollars of rent collected for February and March, less rent for four days in the month of February. Plaintiffs appealed the cause to the Supreme Court and in June, 1903, said court handed down an opinion affirming the judgment of the circuit court (see 175 Mo. 32).

The trial judge found, that "By the occupancy and use of the building leased and the elevator, heating and

lighting apparatus and other fixtures, by the defendants for a period of seven years, one month and four days of the ten-year term, the plaintiffs have partially discharged their obligation to pay for the said elevator and other fixtures, and have thereby acquired an equitable interest in the same to the extent of the payment so made, and to the same extent are therefore entitled in equity to a corresponding interest in the proceeds of the insurance on said property now in the defendants' hands, that is to say, the plaintiffs are entitled to a sum which bears the same relation to $3,980 that seven years, one month and four days bears to the full term of ten years, which sum amounts to $2,823.58. As this sum represents an existing interest in the plaintiffs in the property insured at the time of its destruction by fire, the defendants became trustees thereof for the benefit of plaintiffs, and the plaintiffs will be allowed interest thereon at the rate of six per cent per annum from the time it came into the possession of defendants, to-wit, on the first day of April, 1900, to the present time."

On a motion for new trial, the judge modified his judgment so as to allow interest on the principal sum awarded plaintiffs, from the date of the judgment in the circuit court rescinding the lease. The case was tried before Judge Hough, who filed a written opinion in the case which plaintiffs have printed in their brief. In disposing of the defense of *res adjudicata*, Judge Hough said:

"It is contended by defendants in support of the second plea that under the doctrine of *res adjudicata*, a judgment is conclusive on parties in a subsequent litigation as to an issue necessarily decided by the former litigation, though no specific finding as to that issue appears, and that where a given matter becomes a subject of litigation in, and of adjudication by a court of competent jurisdiction, the court requires the parties to bring forward their whole case, and will not, except

under special circumstances, permit the same parties to open the same subject of litigation in respect of matters which might have been brought forward as part of the subject of contest, but which was not brought forward only because they have from negligence, inadvertence or even accident, omitted part of their case, and it is contended by defendants that the plaintiffs could and should have had determined the defendants' accountability for the insurance money to them in the first action; that it was not a part of defendants' case to bring it forward then, but was a part of plaintiffs' case in avoidance of defendants' prayer for the cancellation of the lease, so that the question arises for determination, whether the plaintiffs in this case could and should have set up in their reply in the former case, their right to a part of the insurance money under the covenants contained in the lease, and which the defendants, in that suit sought to have cancelled. That suit, the former one, was a suit for rent, and was based, of course, upon the theory that the lease was still in existence; the answer sought to cancel the lease for breach upon the part of the plaintiffs of the covenant to rebuild immediately, and to recover rent already paid to plaintiffs upon the theory that the plaintiffs would so rebuild. No new cause of action could have been set up in that case by the plaintiffs in their reply; they were limited to a recovery solely upon the cause of action set out in the petition, so that we are restricted in our inquiry, as to whether the right of the plaintiffs to a portion of the insurance money was a defense to the cross-bill of the defendants, which the plaintiffs were bound to plead in their reply, or be concluded as to the same by their failure to do so.

"The defendants' answer sought for the annulment and cancellation of the lease between the parties, plaintiffs and defendants. The effect of a cancellation of the lease was to extinguish the covenants of the lease, that

is, to relieve each of the parties from any of the obligations imposed by the lease from the date henceforward of the cancellation of the same, but the cancellation of the lease could not divest the plaintiffs of any property rights which had already accrued to them under the lease and which were existing at the date of its cancellation. The fact that by the terms of the lease the plaintiffs were entitled at the date of its cancellation to a portion of the insurance money in the defendants' hands, if they were so entitled, would not have prevented the court from cancelling the lease for a failure to rebuild immediately, and such previously acquired interest could not have been pleaded in bar of cancellation. But if it had been pleaded, could the plaintiffs have gone further and asked that the cancellation of the lease be delayed until the rights of the plaintiffs to a portion of the insurance money were ascertained and have prayed for an ascertainment of the same? Would not such a plea have been an abandonment of their original cause of action, and the assertion of a right to recover on another and totally different cause of action set forth for the first time in their reply."

In regard to the other defense, Judge Hough said:

"As to the rights of the plaintiffs acquired under the lease prior to its cancellation, and still remaining, if any, it is very clear to my mind, that it was the intent of the parties to the lease in this case that the elevator and lighting and heating apparatus paid for by the defendants were to be, and did become, and were intended to remain, a part of the realty, notwithstanding the language of the lease, which said that the same 'shall belong to the parties of the second part (defendants) until the expiration of the lease, when the same shall become the sole property of the said parties of the first part (plaintiffs).' The language employed indicating a reservation of the title, never could, in my opinion, have been made the basis of a right of removal, no matter

under what other circumstances the lease may have been terminated before the expiration of its term. The real intent and meaning of said clause in the lease being that the said elevator, heating and lighting apparatus and fixtures should be regarded as having been fully paid for by the plaintiffs after the defendants shall have had the use thereof for a period of ten years in connection with the building leased from plaintiffs at a rental of $600 a month."

It is well-settled rule of law, that what issues were tried or might have been tried in a former action may be shown by the entire record or by parol evidence, and the judgment in the former action is conclusive on both parties as to all such matters between them. This rule of law applies as well in equitable as in legal actions. [Donnell v. Wright, 147 Mo. l. c. 647-8, 49 S. W. 874; Pennington v. Gibson, 16 How. (U. S.) 65.] The rule is thus stated by GILL, J., at page 118, in the case of Dickey v. Heim, 48 Mo. App. 114.

In Winham v. Kline, 77 Mo. App., at page 46, quoting from Railroad v. Commissioners, 12 Kan. 127, we said: "To make a matter res adjudicata there must be a concurrence of the four conditions following: identity of the thing sued for; identity of the cause of action; identity of persons and parties to the actions; identity to the quality of the persons for or against whom the claim is made.

In Barkhoefer v. Barkhoefer, 93 Mo. App. l. c. 381-2, 67 S. W. 674, commenting on a plea of res adjudicata, GOODE, J., said:

"But the judgment in the first case enjoys no such prerogative if the second action is for a different cause of action from that contested in the first one; this is the distinction to be always seized as vital to the right determination of pleas of res adjudicata, and it will clear up a great deal of the confusion in the multitudinous decisions on the subject. In the second class of cases

the judgment only concludes the parties as to points actually determined; that is, as to issues tendered or joined by the pleadings and decided; not those which might properly have been but were not; for the rights of parties ought not to be construed away. [Dickey v. Heim, 48 Mo. App. 114; Cromwell v. Sac County, 94 U. S. 351; Short v. Taylor, 137 Mo. 517, 38 S. W. 952; Kerry v. Quarles, 14 Gratt. 48.]"

The same learned judge, in Buder, Trustee v. Columbia Distilling Co., 96 Mo. App., at pages 562-3, 70 S. W. 508, said: "For the defense of res adjudicata to be made good it must be shown usually that the matter controverted in the second action was raised and litigated in the first one. [Garrett v. Greenwell, 92 Mo. 120; Bell v. Hoogland, 15 Mo. 360; Block v. Dorman, 51 Mo. 31; Nelson v. Barnett, 123 Mo. 564, 27 S. W. 520; Winham v. Kline, 77 Mo. App. 36; Coleman v. Dalton, 71 Mo. App. 14; Short v. Taylor, 137 Mo. 517.]"

In Railroad v. Levy, 17 Mo. App. 1. c. 508, PHILIPS, P. J., approvingly quoted from Henderson v. Henderson (3 Hare 100-115) as follows: "Where a given matter becomes the subject of litigation in and of adjudication by a court of competent jurisdiction, the court requires the parties to bring forward their whole case, and will not, except under special circumstances, permit the same parties to open the same subject of litigation in respect of matter which might have been brought forward as part of the subject in contest, but which was not brought forward only because the party has from negligence, omitted part of his case."

A plaintiff, in stating his cause of action, must state the whole of it. He cannot split one cause of action and make two suits of it, and a defendant must state in his answer all the defenses he has to the cause of action stated in the petition. He cannot, under a general denial, when defeated, afterwards sue plaintiff on a matter that would have constituted a good defense

to the prior action. [Davidson v. Mayhew, 169 Mo. l. c. 265, 271, 68 S. W. 1031.] To defendants' cross-bill in the action for rent, plaintiffs might have replied by a general denial, or by alleging any new matter not inconsistent with the petition. [R. S. 1899, sec. 607.] Defendants contend that the rescission of the lease dated back to the breach of the contracts by plaintiffs, on account of which the St. Louis Circuit Court cancelled the lease, and that plaintiffs' right of action, if any, to recover the insurance fund, accrued when they breached the contract by failing to erect a new building. Theoretically, this is true, but to apply the theory to this case would put plaintiffs in a false position. They sued upon the contract, on the theory that there had been no breach, except in defendants' failure to pay two months' rent. In their cross-bill defendants allege a breach of the contract, on account of which they asked for a rescission. Plaintiffs denied the breach and contested the right of defendants for a rescission. The insurance fund, under the terms of the contract, was to be applied in the restoration of the fixtures destroyed by fire, and defendants had been notified by plaintiffs to use it for that purpose. In these circumstances, to have made a claim for the insurance fund in the reply would have been inconsistent with both the petition and the position plaintiffs occupied throughout the trial, and they were not called upon to anticipate the court would rescind the contract, and on such anticipation set up a claim for the insurance fund. They had a right to await the decision of the court on this question and then claim the insurance fund in a separate action, a right which they did not in fact acquire until the judgment cancelling the lease was rendered. [Barkhoefer v. Barkhoefer, supra.] Plaintiffs might, perhaps, have brought the insurance fund to the attention of the court in their reply, and on the cancellation of the lease had their right to the fund adjudicated and protected by a proper

decree. But their right to the fund had not accrued at the time of the filing of the reply. It could not accrue until there was a rescission of the lease, or until the expiration of defendants' term. In such circumstances, it seems to us, plaintiffs had the right to contest a rescission of the lease under their general denial, and, when defeated, to bring a new action to recover what accrued to them by reason of the judgment of rescission. Again, the fact that plaintiffs would be entitled to the insurance fund on a cancellation of the lease, constituted no defense to the defendants' crossbill, and for this reason, if for no other, plaintiffs were not bound to bring it to the attention of the court in their reply. Had it been properly brought to the attention of the court, the court might, and perhaps would have so modified its decree as to require the payment of the fund to plaintiffs as a condition precedent to the taking effect of its decree rescinding the lease, but could not have refused to rescind for the reason defendants had not paid or tendered the fund to plaintiffs. We conclude that plaintiffs are not estopped by the former judgment. As to the other defense, we approve and adopt the opinion of Judge Hough on that branch of the case.

The judgment is affirmed. All concur.