PRODUCERS PACKING COMPANY, Respondent, v. H. J. FISCHER and J. W. SIMS, Appellant.*

Kansas City Court of Appeals. May 25, 1925.

1. **APPEAL AND ERROR: Error in Admission of Evidence, Held Harmless in View of Admission of Liability and Verdict Based Thereon.** In a suit by landlord upon a bond given to secure faithful performance by lessee of a lease between plaintiff, as lessor, and another, as lessee, defendants being sureties, *held* if there was any error, in admitting testimony of alleged defaults of lessee after forfeiture and submitting such defaults as basis for plaintiff's recovery, the error was harmless, in view of defendants' admission of extent of liability and jury's verdict based thereon.

2. **CONTRACTS: Meaning of Technical Trade Terms, One of Fact for Jury, Where There is conflicting Evidence as to Meaning Thereof.** When technical trade terms are used in a contract, expert testimony should be introduced to explain their meaning and where there is conflicting expert evidence on the question, the meaning is one of fact for the jury under proper instructions, the construction of the contract always being a matter for the court.

3. ————: **Evidence: Meaning of Plain and Ordinary Words is a Question of Law for Court.** Meaning of plain and ordinary words in common use is a question of law for the court and needs no expert testimony to explain.

4. **APPEAL AND ERROR: Instructions: Instructions Given Without Definition Will Not Cause Reversal in Absence of Request for Definition.** The use of words or terms in instructions given without definition or explanations will not cause a reversal of the cause in the absence of requests to define or explain them.

5. **LANDLORD AND TENANT: Lease Providing for Sinking of Well and Installation of Pump to Furnish Water Construed.** Where lease provided that landlord would sink a well and install pump to fur-

nish ninety gallons of water per minute, *held* to mean that the landlord was to sink a well and equip same with a pump which when completed could be made to furnish as much as ninety gallons of water per minute for such periods of time as the reasonable requirements of the business of the tenant might demand.

*Corpus Juris-Cyc. References; Appeal and Error, 3 C. J., p. 855, n. 39; 4 C. J., p. 978, n. 4; p. 985, n. 83. Contracts, 13 C. J., p. 788, n. 14, 15. Evidence, 22 C. J., p. 550, n. 31. Landlord and Tenant, 36 C. J., p. 194, n. 79.

Appeal from the Circuit Court of Pettis County.—*Hon. Dimmitt Hoffman,* Judge.

AFFIRMED.

*Paul Barnett* for respondent.

*W. W. Blain* and *Montgomery & Rucker* for appellant.

BLAND, J.—This is a suit upon a bond given to secure the faithful performance by the lessee of a lease between plaintiff as lessor and one E. R. Branson as lessee, defendants being sureties upon the bond. There was a verdict and judgment in favor of plaintiff in the sum of $500 and defendants have appealed.

The facts show that plaintiff on June 24, 1923, leased to Branson that part of its packing plant used for an ice plant. The lease was for two years with the privilege given to the lessee to extend it for an additional three years. The lease provided that the lessor was sinking a deep well on the property on which the packing plant was located and that when said well was sunk to a certain depth it would equip the same with a pump and if when said well was completed and the pump installed "said well and pump could be made to furnish ninety gallons of water per minute" then the well and pump should be leased for a term beginning at the time when the well was completed and the pump installed and ter-

minating with the termination of the lease; that for the well and pump lessee should pay as rent the sum of $250 per month for a specified time and which should begin on the day that the well and pump were fully completed and installed and turned over by the lessor to the lessee, and should be payable each month in advance; that the lessee should furnish labor and superintend the making of repairs on machinery and refrigerating pipes in that part of the plant reserved by the lessor; that the lessee should furnish to the lessor refrigeration and steam for its packing plant; that the lessee should refrigerate nine cold storage rooms in the packing plant and keep the same at certain specified temperatures; that the lessee should furnish steam to the packing plant for the purpose of operating various machines and appliances used therein in the slaughtering of animals and for the purpose of operating the heating system in the plant. This service was to be in lieu of cash rent for the use of the ice plant but did not cover rent for the use of the deep well. It was further provided in the lease that if the lessee should fail to perform any of the conditions imposed upon him, the lease at the election of the lessor might be declared forfeited, and that the lessor might re-enter and retake the leased premises. The lease was silent as to whether such re-entering and retaking should relieve the lessee of the payment of the rent.

The lease further provided that the plant should be insured as a whole by the lessor and that the lessee should pay a certain portion of the insurance premium to the former and provided that upon the taking of possession the lessee should execute a bond with one or more sureties thereon in the sum of $4000 ''conditioned that he will perform the conditions of his said lease for not less than one year.'' The bond was executed in accordance with the lease, the former reciting,

''Now, therefore, if the said E. R. Branson shall perform the conditions of his said lease which are imposed upon him therein, for a term of not less than one year,

then this obligation to be void; otherwise to remain in effect."

Plaintiff's evidence tended to show that prior to August 1, 1923, it completed the deep well and installed the pump, all in accordance with the provisions of the lease, and that they were accepted by the lessee on that day. There was evidence on the part of defendants that the pump did not comply with the lease and was never accepted by the lessee. The lessee entered into possession of the leased premises under the lease but did not pay any rent, but in September, 1921, he left Sedalia with the ice plant in operation and has not been heard of since. Plaintiff took possession of the leased premises on September 13th and has continued operating the same. The petition prays for the monthly rental of $250 for the months of August, September, October and November and "because of the failure to supply water in the sum of $146.20, and because of his failure to pay one-fourth of the insurance premiums as aforesaid, in the sum of twenty-five dollars ($25)."

At the request of plaintiff the court gave instruction No. 1 which, in part, told the jury that if they found that the well was completed and the pump installed and that when completed and installed they "could be made to furnish as much as ninety gallons of water per minute" and that said well and pump were turned over to lessee and accepted by him on the 1st of August, 1923, and that the lessee did not pay any rent under the lease and did not pay one-fourth of the insurance premium for certain insurance carried upon the plant, and that plaintiff took possession of the ice plant on September 13, 1923, and that plaintiff had not made a profit in the operation of the ice plant since taking it over, their verdict should be for plaintiff.

Defendants offered instructions D, E, and F, each of which were drawn upon the theory that when plaintiff re-entered and retook possession of the leased premises the relation of landlord and tenant ceased and the lessee was excused from the payment of rent not

then accrued, and that the release of the lessee released the defendants. Defendants' refused instruction G sought to tell the jury that there was no obligation to pay rent under the lease unless plaintiff furnished a well and pump that could be made to furnish as much as ninety gallons of water per minute *for twenty-four hours of each day during the life of the lease* and unless they so found, their verdict should be for defendants.

It is insisted that the court erred in admitting evidence that the rent falling due after the forfeiture was declared had not been paid; evidence of insurance premiums paid by plaintiff covering a period after such time; in giving plaintiff's instruction No. 2 on the measure of damages permitting the jury to allow plaintiff not only for August and September rent but rent for October and November, which last two months' rent fell due after the forfeiture of the lease, and in refusing to give defendants' instructions. In this connection it is insisted that the lessor in declaring a forfeiture on September 13, and in re-entering and retaking the premises terminated the tenancy of the lessee and released the latter from all liability to pay rent or insurance premiums accruing after that day, and that in releasing the lease the sureties were also released as a matter of law.

Plaintiff insists that the lease in controversy is not an ordinary lease; that it required the lessee to do and perform certain things in connection with the operation of the packing plant as well as the ice plant and if he failed in his contract, the packing plant would have to be shut down unless possession was taken by the plaintiff and the leased premises operated by it; that plaintiff did not attempt to find a new tenant for the reason that the leased premises were a part of the packing plant of plaintiff and it would require technical and expert training on the part of any one rendering to plaintiff the services provided for in the lease; that construing the lease as a whole, the obligations assumed by the lessee under the terms of the lease and the sureties on the bond did not cease at the time the forfeiture was declared.

219 Mo. App.—28.

It is not necessary for us to pass upon the controversy between the parties in reference to the proper construction of the lease in this regard, for the reason that if there was any error in admitting testimony of the alleged defaults of lessee after the forfeiture was declared and in submitting to the jury such defaults as a basis for plaintiff's recovery, the error was harmless for the reason that plaintiff's instruction No. 1 (being its principal instruction and the only one except on the measure of damages) required the jury to find that the well and pump could be made to furnish as much as ninety gallons of water per minute; that they were turned over and accepted by the lessee on August 1, 1923, and that the lessee abandoned the lease before September 13, 1923, the date forfeiture was declared. If the jury returned a verdict for plaintiff, it necessarily found these facts to be true. It is admitted by the defendants that the lessee incurred liability for the rent that fell due on the 1st of August and September, which would be $500, and this was all the jury allowed. In view of this admission by the defendants, it was only necessary in order for the jury to return a verdict for plaintiff in the sum of $500 to find that the well and pump complied with the terms of the lease providing that they should be made to furnish as much as ninety gallons of water per minute and was taken over by the lessee on August 1st, which, as we have before stated, the jury must have found.

There was no error in the giving of plaintiff's instruction No. 1 on account of the fact that it told the jury, among other things, that if plaintiff furnished a well and pump which "when completed and installed could be made to furnish as much as ninety gallons of water per minute," etc., their verdict should be for plaintiff. It is insisted by the defendants that a pump that could only be made to produce ninety gallons of water for a minute or two would not comply with the lease. The language of the instruction is that contained in the lease. It is conceded that the question as to what the

lease meant by providing for a well and pump that could be made to furnish as much as ninety gallons of water per minute, is one of construction by the court and not a technical term that requires expert testimony to explain. When technical trade terms are used in a contract, expert testimony should be introduced tending to explain their meaning and where there is conflicting expert evidence on the question, the meaning is one of fact for the jury under proper instructions, the construction of the contract always being a matter for the court. [13 C. J., p. 788; Kirchgraber v. Floyd, 59 Mo. App. 59; Bowles Live Stock Commission Co. v. Hunter, 91 Mo. App. 333.] But the meaning of plain and ordinary words in common use is a question of law for the court and needs no expert testimony to explain. [13 C. J., p. 788; Weil v. Schwartz, 21 Mo. App. 372.] "Where the court is authorized to construe words (or terms) it may expound their meaning in the charge" (38 Cyc. 1686) but the use of such words or terms in instructions given without definition or explanation will not cause a reversal of the cause in the absence of requests to define or explain them. [38 Cyc. 1688; Quirk v. Elevator Co., 126 Mo. 279; Kirschman v. Scott, 166 Mo. 214; Berryman v. Southern Surety Co., 227 S. W. 96, 101, and cases therein cited.]

Defendants sought to instruct the jury as to what was meant by the use in the contract of the words in question, in their instruction G, but that instruction was properly refused because it did not submit a proper construction of those words. This is practically admitted by the defendants who state in their brief that—

"It is quite possible that the appellants' requirements as stated in its refused instruction G were excessive and that the covenant did not mean that the well and pump must be of such capacity as to furnish ninety gallons per minute every day during the entire life of the lease; although such interpretation is a far more reasonable one than the interpretation adopted by the court and embodied in Instruction 1. In making this covenant

it must have been contemplated that at times the tenant would need a well and pump which could be made to yield ninety gallons per minute for reasonable periods of time—perhaps only a few hours at a time. Probably at certain periods, several days at a time. The very narrow interpretation of this covenant as stated in Instruction 1 is clearly erroneous even though the true interpretation lies somewhere between the extremes as stated respectively by the respondent and the appellants. It will therefore be a great help to the trial of this case if the court would indicate what is a fair interpretation of this covenant. In this connection we might suggest that perhaps this covenant means that the landlord was to sink a well and equip the same with a pump which when completed could be made to furnish as much as ninety gallons of water per minute for such periods of time as the reasonable requirements of the business of the tenant might demand.''

We adopt defendants' theory as to what the lease means, that is, ''that the landlord was to sink a well and equip the same with a pump which when completed could be made to furnish as much as ninety gallons of water per minute for such periods of time as the reasonable requirements of the business of the tenant might demand.''

The judgment is affirmed. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.