PRODUCERS PACKING COMPANY, APPELLANT, v. H. J. FISCHER ET AL., RESPONDENTS.*

Kansas City Court of Appeals. May 24, 1926.

*Corpus Juris-Cyc References: Actions, 1CJ, p. 1111, n. 3; Contracts, 13CJ, p. 608, n. 30, 31; Judgments, 34CJ, p. 839, n. 8; Landlord and Tenant, 35CJ, p. 1077, n. 41; Principal and Surety, 32Cyc, p. 82, n. 77.

*Paul Barnett* for appellant.

*W. W. Blain* for respondent.

BLAND, J.—This is an appeal taken from the action of the trial court in rendering judgment for defendants upon the pleadings. The suit is one upon a bond in the sum of $4000, given to secure the per-

formance by the lessee of a lease between plaintiff as lessor and one E. R. Branson, as lessee, defendants being sureties upon the bond.

The facts as disclosed by the pleadings show that plaintiff on June 24, 1923, leased to Branson that part of its packing plant in the City of Sedalia used for an ice plant. The lease was for two years with the privilege given to the lessee to extend it for an additional three years. The lease provided that the lessor was sinking a deep well on the property on which the packing plant was located; that when said well was sunk to a certain depth it would equip the same with a pump and if when said well was completed and the pump installed, they could be made to furnish ninety gallons of water per minute, then the well and pump should be leased for a term beginning at the time when the well was completed and the pump installed and terminating with the termination of the lease; that for the well and pump, lessee should pay as rent the sum of $250 per month until the amount of rent and the water charge therein mentioned should equal the full cost to lessor in sinking the well and installing the pump, and that said monthly payments should begin on the day that the well and pump were fully completed and installed and turned over by the lessor to the lessee and should be payable each month in advance. The well was sunk and the pump installed as provided in the lease and the well and pump were turned over to Branson and accepted by him under the lease on the first day of August, 1923.

The lease further provided that the plant as a whole should be insured by the lessor and that the lessee should pay one-fourth of the insurance premium to the former. It further provided that the lessee should furnish labor and superintend the making of repairs on machinery and refrigerating pipes on that part of the packing plant reserved by the lessor; that the lessee should refrigerate nine cold storage rooms in the packing plant and keep the same at certain specified temperatures; that the lessee should furnish steam to the packing plant for the operation of various machines and appliances used therein in the slaughtering of animals, and for the purpose of operating the heating system in the plant. These services were evidently to be in lieu of cash rent for the use of the ice plant as they did not cover rent for the use of the deep well. The lease also provided that if the lessee should fail to pay rent or any installment thereof when it became due, or fail to perform any of the conditions imposed upon him by the contract, then the lease at the election of the lessor might be declared forfeited.

The ice plant was a part of the packing plant and the former and its equipment were the only means available for the furnishing of refrigeration and steam to the packing plant; it could not be operated without refrigeration and steam. This was known to the defendant and was within the contemplation of the parties at the time the lease and bond were executed. It was also known that if the lessee should

fail or cease to furnish refrigeration or steam, plaintiff would be compelled to take possession of the ice plant and operate the same or shut down its packing plant, and it was in the contemplation of the parties at the time the lease and bond were executed and delivered that plaintiff would take over the ice plant in the event that Branson ceased to furnish refrigeration or steam. The manufacture of ice and the operation of the ice plant were carried on at a profit during the summer season when a large amount of ice could be sold but it was operated at a loss during the winter. This was known to the parties at the time the lease and bond were executed and within the contemplation of the parties and one of the purposes of the bond was to protect plaintiff from the contingencies that Branson should cease to operate the plant at the end of the profitable season and cease to furnish steam and refrigeration, compelling plaintiff to re-enter and take possession.

Branson took possession of the ice plant under the lease on June 24, 1923, but did not pay any rent for the pump and deep well, and in September, 1923, departed from Sedalia leaving the ice plant in full operation, and has not been heard of since. He made no arrangements for further payment of the employees and left no fuel with which to operate the ice plant. Plaintiff was forced to re-take possession of the ice plant and operate the same. On September 13, 1923, plaintiff exercised its option to forfeit the lease and took possession of the property because of the failure of Branson to perform the conditions to pay said rent described in the lease. Plaintiff has continued in the possession and operation of the ice plant. The premises were a part of the packing plant and under the terms of the lease the lessee was required to give technical and expert service to plaintiff. The property was not of such nature that it could be re-rented and for this reason no effort has been made to re-rent it. Branson failed to pay any of the $250 monthly payments. Plaintiff kept the property insured as agreed and paid insurance premiums in the sum of $100 but Branson failed to pay one-fourth or any part thereof.

In its petition plaintiff alleged that in the operation of the ice plant between November 3, 1923, and June 23, 1924, it lost the sum of more than $8000 as the direct result of Branson's breach of his lease; that plaintiff had recovered the sum of $500 on the bond. Plaintiff, therefore, prayed judgment for only $3500, the bond being for $4000.

It appears from the pleadings that plaintiff on November 3, 1923, brought another suit against the defendants upon the same bond in which there was a judgment for plaintiff in the sum of $500. [See Producers Packing Co. v. Fischer et al., 275 S. W. 979.] This sum was for the rent of the pump and the deep well for August and September although plaintiff prayed judgment for rent for these months

together with that for October and November, or to the time the suit was filed. In said suit the jury were instructed that in order to return a verdict for plaintiff they must find that plaintiff did not make a profit in the operation of the ice plant. In the former suit plaintiff did not seek to recover for the money lost in the operation of the ice plant but only for the cash rent up to the time of the filing of the suit, but the jury returned a verdict for only the rent due for August and September. The petition in the former suit asked judgment for $25, being one-fourth of the insurance premium paid but the jury allowed nothing for this. The petition also prayed for $146.20 on account of Branson's failure to supply water under the terms of the lease, but before the cause was submitted to the jury this item was dismissed.

Plaintiff insists that the court erred in sustaining the motion for a judgment on the pleadings. No point is made that this was not a proper method of attacking the sufficiency of the pleadings but plaintiff claims that under the facts admitted by the motion he is entitled to recover. Defendants, however, claim that plaintiff, upon the abandonment of the premises and equipment by Branson, having forfeited the lease and taken possession of the premises and operated the ice plant and machinery, elected to terminate the lease on September 13, 1923; that plaintiff's conduct terminated the lease and with it all unaccrued liabilities of the lessee upon his covenants and stipulations in the lease dependent upon the continuance of the term; that the principal not being liable for these, the sureties are not; that plaintiff is now suing for damages suffered after re-entry and cannot recover the same but the only items of damage that it may recover, if the former suit is not a bar to such recovery, is for the rent and liabilities accruing previous to the re-entry. We think there is no question but that defendants' contention is well taken. [16 R. C. L., pp. 970, 971, 974, 1137; Sharon v. American Fidelity Co., 172 Mo. App. 309; St. Louis Billposting Co. v. Stanton, 172 Mo. App. 40; Sander v. Commission Co., 121 Mo. App. 293, 297; Lawrence Matthew's Administrator v. Tobener, 39 Mo. 115; 24 Cyc. 1359; 13 C. J. 608; 1 Taylor's Landlord and Tenant, sec. 424b (9 Ed.); 32 Cyc. 82.] If plaintiff desired to escape the effects of its action in the above respects, it should have expressly provided for the same in the lease.

We think defendants' contention that plaintiff is estopped from suing for damages sought to be recovered in this proceeding by reason of the recovery in the former suit, is well taken, regardless of the question of plaintiff's inability to recover for liabilities accruing after the termination of the lease. It is well settled that where there has been an entire and total breach of the contract so as to authorize plaintiff to put an end to it, he may and must recover all damages in one action, he cannot split his cause of action. [8 R. C. L., p. 550; 6 R. C. L., pp. 1021, 1022; Lawson on Contracts, sec. 471; 34 C. J.,

p. 839; 1 C. J., p. 1111; Salzgeber v. Michel, 60 Pac. 1009; Puckett v. National Annuity Association, 134 Mo. App. 501, 507, 508; Booge v. Pacific Railroad, 33 Mo. 212; Soursin v. Solargne, 14 Mo. App. 486; Lincoln Trust Co. v. Nathan, 122 Mo. App. 319; Sprinkle v. Fleming Estate, 209 Mo. App. 405; St. Louis v. United Rys. Co., 263 Mo. 387.]

Plaintiff claims that the former suit was one for rent while this one is for breach of contract and that the two are different and distinct causes of action and the recovery in the first is not a bar to this suit. Assuming that a suit upon a breach of contract to recover for the amount due under the contract where the breach is total, is a different cause of action than an ordinary one for damages sustained by reason of the breach of the contract, there is no merit in plaintiff's contention for, as we view it, this, as well as the former suit, is for rent. There is nothing disclosed in the pleadings in the case at bar showing that Branson was guilty of any act or omission resulting in damage to the leased premises or equipment but recovery is sought on the ground that plaintiff lost money in the operation of the ice plant after it took possession and operated it. There is nothing disclosed tending to show that it cost plaintiff any more to operate the ice plant than it would have had no lease ever been entered into or breached. The complaint seems to be merely that Branson had the advantage of operating the ice plant and selling ice during the summer time, which from a financial standpoint was a better season in which to operate the plant than in the winter; that he left the plant on plaintiff's hands upon the approach of winter and by reason of plaintiff's having to operate the plant for the balance of the year covered by the bond, it lost considerable money.

The lease provided, in effect, that in lieu of the payment of rent by Branson to plaintiff for the use of the ice plant, Branson should furnish refrigeration and steam for the operation and heating of the plant and pay a portion of the insurance, and in deciding the point now under discussion, these things to be furnished by Branson should be treated as rent. [American Bonding Co. v. Pueblo Investment Co., 150 Fed. 17, 28-31.] Of course, on account of the peculiar conditions surrounding the operation of this ice plant, in that the operation of the plant in the summer time was more advantageous than in winter, the value to plaintiff of the rent payable during the latter time was greater than during the former. This is true because if it operated the ice plant itself instead of having someone else do it under a lease, the net cost to plaintiff in producing the things Branson agreed to do would be greater in winter, but what plaintiff was getting during both seasons was rent and nothing else. Plaintiff is now suing, at least in part, for the net cost to it in doing the things that Branson agreed to do under the lease; in other words, for the value, at least in part, of the rent that Branson agreed to pay. It follows that this suit is based upon rent and whether it be construed as a suit for dam-

ages for breach of contract or not, plaintiff having recovered for rent after the termination of the lease, electing not to wait until all of the rent was due and the money value thereof ascertainable (if it could not have been ascertained then), is now barred from suing for further rent.

The judgment is affirmed. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.