SKENDZEL v. ROSE MANOR
REALTY CO.
Civil Action No. 4473.

United States District Court
E. D. Wisconsin.
May 27, 1948.

Wahlberg & Gray, of Milwaukee, Wis., for plaintiff.

Bitker & Marshall, of Milwaukee, Wis., for defendant.

DUFFY, District Judge.

Defendant is the owner of real estate located at 726 West Wisconsin Avenue, Milwaukee, upon which, some undisclosed number of years ago, a two story building was erected. The portion of the property here under consideration is a five-room suite on the second floor known as Apartment 2. The front room, facing on Wisconsin Avenue, contains 217 sq. ft. The adjoining room to the rear, known as Space 2, contains 232 sq. ft. Further to the rear are three small rooms, measuring 12' x 15', 10' x 6', and 5' x 9' respectively, designated as Spaces 3, 4 and 5, and used as a kitchen and two bedrooms. In addition to the five rooms there is a very small bathroom or lavatory, measuring 4' x 7', which can only be entered from Room 4.

Prior to March 1, 1942, defendant's predecessor in title had rented this apartment for residential purposes for $15 a month, and it was accordingly registered at the O.P.A. Office at that figure. After defendant acquired the property, it petitioned the Rent Director for permission to evict the then tenant, stating its reason as the desire to convert the premises into offices. On May 2, 1946, the Rent Director authorized an eviction, said authorization stating. "The purpose for which the eviction of the tenant is authorized is to withdraw premises from the rental market."

Defendant made no physical changes or alterations in the premises, and advertised Apartment 2 for rent. Plaintiff responded to that ad and a lease was entered into by plaintiff and the defendant, covering a 17½ month period commencing November 15, 1946, at a rental of $100 per month. In return for interior decorating to be done by plaintiff she was allowed the first month's rent free. The lease contains no specific language as to the use to be made of said apartment except that it was described therein as "Dressmaking Shop, Suite 2, 726 W. Wisconsin Ave." Plaintiff had informed defendant that she intended to use said leased premises for housing purposes, as well as for her dressmaking business, and defendant offered no objection thereto. Shortly thereafter plaintiff and her two unmarried daughters took up their residence in the apartment.

Plaintiff used the front room to conduct her dressmaking trade. While she occasionally used Room 2 for fittings, customarily it was used as her living room; it was the only space in the apartment suitable for such use by plaintiff and her daughters. Its furniture consisted of a piano, couch, easy chairs, lamps, radio, etc.

The area between 7th and 8th Streets on Wisconsin Avenue is the fringe of the downtown business district. While the first floors of all of the buildings in this block on both sides of Wisconsin Avenue are occupied by small retail stores and shops, the second floors and above in many of the buildings contain apartments used

for housing. As far as the evidence discloses, the apartment here under consideration, previously to being rented to plaintiff, had been used as an apartment for housing, but never for business purposes.

Plaintiff decided to discontinue living in the suite and on June 22, 1947, advertised the same for rent in a local newspaper under the heading, "Business Places for Rent," identifying the premises as "Wisconsin Avenue Sewing Shop," and asking $500 for her business and equipment, and $100 monthly as rent. Plaintiff was unable to rent the premises for the balance of the term and vacated the premises on July 17, 1947, moving into a home which she had purchased.

Alleging overpayment in rent plaintiff brings this action for treble damages pursuant to the Emergency Price Control Act of 1942, as amended and extended by Price Control Extension Act of 1946, 50 U.S.C.A.Appendix, § 901 et seq. As defences the defendant urges (1) that at the time of the rental to plaintiff the premises in question were not subject to rent control due to the action of the Rent Director hereinabove referred to; (2) that the premises were a single nonseparable unit, and that the same were used predominantly for business purposes; and (3) if it be determined that the premises were not used predominantly for business purposes, that the plaintiff must first pursue the appropriate administrative remedy by having the Rent Director issue an order finding the premises to be subject to rent control and to determine the rental value of that portion of the premises used for housing accommodations.

Interpretation 1(a)—I of Rent Regulations for Housing provides in part: "If the business and dwelling portions are not separable according to the tests set out above, the two portions are to be treated as a unit for purposes of determining whether the property is subject to the Regulation. The initial test of predominant use is to be made on a space basis. If a predominant part of the space is used for business purposes, the property is not subject to the Regulation. * * *" In as much as Space 2 was only occasionally used for business purposes, it is apparent that the initial test discloses that the predominant use of the apartment was for housing purposes. The Interpretation, however, continues:

"* * * Where less than a predominant part of the space is used for business purposes * * * a second test of predominant use, in terms of rental value, is to be used. If the rental value of the business portion (or of the business use, where the two uses are not physically segregated) is clearly in excess of the rental value of the dwelling portion, the property is not subject to the Regulation; otherwise it is subject.

"Thus, the property as a unit is free of control by the Regulation where either (1) the predominant use, on a space basis, is for business purposes, or (2) the rental value of the business portion is clearly in excess of the rental value of the dwelling portion. If neither of these tests is satisfied, the property as a unit is subject to the Regulation."

■ Defendant produced as a witness a man with experience as an appraiser of Milwaukee real estate. He gave as his opinion that if the front room alone were used for business purposes its rental value was $50 a month and the rental of the balance of the rooms $30 per month, and that if Space 2 were also used half of the time for business purposes the rental value of Space 1 and Space 2 thus used was $60 per month and the rental value of the remaining space $25 per month. As plaintiff did not produce any expert testimony on rental values, defendant claims that this court must necessarily accept the expert testimony as the fair rental value and find that the rental value for business purposes was predominant. Defendant's argument in this respect cannot be sustained.

■ Opinion evidence alone is not conclusive (Baxter v. Chicago & Northwestern Railway Co., 104 Wis. 307, 330, 80 N.W. 644; Bourda, v. Jones, 110 Wis. 52, 85 N.W. 671) even though uncontroverted (The Conqueror, 166 U.S. 110, 131, 17 S. Ct. 510, 41 L.Ed. 937; 32 C.J.S., Evidence, § 567, p. 379). In Hawkinson v. Johnston,

8 Cir., 122 F.2d 724, at page 731, 137 A.L. R. 420, the court said: "* * * The weight to be given purely opinion evidence is always a matter for the appraisal and judgment of the trial court or jury, in the light of all the circumstances of the particular situation." Courts may properly subject the opinions of experts to a discriminating review and the trier of facts is not ordinarily bound to follow the opinions of experts. Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627, 64 S.Ct. 724, 88 L.Ed. 967. "The circumstances of the particular situation" disclose that this suite of five rooms and lavatory had never been used for business purposes. In March, 1942, the First Wisconsin Trust Company was the owner. It is well known locally that this company has had wide experience in the owning, selling and renting of Milwaukee real estate. Apparently the best it could obtain at that time for Apartment 2 was $15 a month rental for housing purposes. We can take judicial notice of the frenzied demands for housing accommodations in Milwaukee when the war ended, and that while demand for business space in the downtown area eased somewhat the demand throughout the city for housing accommodations remains intense to this date. When defendant became the owner of the property, desiring to be rid of the $15.00 per month tenant, it petitioned the Rent Director for that tenant's eviction on the basis of converting the space to offices. However, after the tenant was out, defendant did nothing to renovate or remodel any of the rooms, except that the plaintiff was allowed a credit of $100.00 for redecorating. Another factor to be considered is that Space 1 has no access to toilet facilities except through Space 4; neither has Space 2. Section 38.1 of the Milwaukee Building Code requires that toilet facilities be furnished in property used for business or commercial purposes.

[4] From all of the evidence, I conclude that, based on the space test, as well as the test of the rental value of the business and housing portions of the premises, Apartment 2 was subject to rent regulation.

But plaintiff is not without remedy because she did not, before commencing this action, petition the Rent Director to fix the rental value of the apartment for housing purposes. The authorization to evict the former tenant was given by the Rent Director on the basis that the premises were to be converted into offices and withdrawn from the rental market. The defendant thereafter rented the apartment to plaintiff for part-business-and-part-housing use. Defendant thereby assumed the risk that the premises thus rented might not meet the tests prescribed by the regulation. The authorization for eviction did not blot out the $15.00 per month limit if the premises were in fact rented for housing purposes. Until the defendant actually rented the premises for business use within the meaning of the regulation, the authorized rental for housing purposes remained at the original figure. Hence when defendant collected $100 a month for eight months from plaintiff, it violated the regulation by overcharing $85 a month for that period.

I recognize that a suit is pending in the State court wherein Rose Manor Realty Company demands from Mrs. Skendzel payment for unpaid rent for the balance of her lease at the rate of $100 per month. But an asserted claim of liability in another lawsuit is no basis for awarding damages here. Even though a judgment were obtained in that suit in the amount called for by the terms of the lease, the plaintiff might be judgment-proof, and not pay. Moreover, if defendant forces the plaintiff to make further payments of rent at an over-ceiling rate, a new cause of action would arise which, in view of the decision herein, would call for the imposition of treble damages.

We now reach the question of whether more than single damages should be allowed. Some circumstances herein indicate that the court should exercise its power of discretion (Bowles v. Krodel, 7 Cir., 149 F.2d 398) to impose more than single and up to treble damages, for I am convinced that the defendant utilized the eviction procedure as a means to be rid of the $15 per month limitation, for by evicting the former tenant defendant was enabled to jump the rent $85 per month without any remodeling or repairs, except for

the small redecorating allowance made to plaintiff. Yet I am convinced that defendant believed it was acting within the law. It advertised the premises for rent under the column, "Business Places for Rent." Further, defendant insisted that plaintiff should conduct a dressmaking business in at least the front room of the apartment. Under the circumstances, and having in mind that for eight months the plaintiff actually did use part of the premises for business purposes, single damages will be allowed. In addition, attorney fees for plaintiff will be assessed in the sum of $125.