JANE McMORRIS et al., Respondents, v. KEELEY REAL ESTATE CO., Appellant.

St. Louis Court of Appeals, April 5, 1910.

1. **LANDLORD AND TENANT: Leasehold: Re-Assignment: Effect Upon Covenants: Good Faith.** The law permits an assignee of a leasehold to rid himself of liability for future breaches of the covenants of a lease by re-assignment, and this right is not limited by a requirement that he shall assign to a responsible party only, but the transfer must be actual—not merely formal, with the assignor left in enjoyment and the parties intending the use of the premises shall not be transferred

2. ——: ——: ——: ——: **Reason for Rule.** The liability of the first assignee on the covenants of the lease for breaches occurring while he is in possession does not arise from a contract made by him wherein he bound himself by covenants, but from his having come into privity of estate with the original lessee, by taking an assignment of the leasehold from the latter, and hence when the privity of estate is sundered, the liability of the assignee on the covenants ceases.

3. ——: ——: ——: **Transaction Held to be Fictitious: Facts Stated.** An assignee of a lease, in order to escape the payment of taxes in accordance with the covenants of the lease, executed an assignment of it to an irresponsible party for the sum of five dollars and simultaneously took a lease of the same premises from said party, for a term a few days less than the unexpired term of the original lease, the consideration being the sum of ten dollars. There was no change of possession; the sublease was taken simultaneously with the assignment; and the sublessor had no use for the premises and did not know what he was about, further than that he was getting five dollars for a few minutes' time. *Held*, said assignment was a sham, the party executing it really owned the original leasehold all the time and occupied it as a tenant of the owner without a moment's intermission, and that he was liable for the payment of the taxes.

Appeal from St. Louis City Circuit Court.—*Hon. Wm. M. Kinsey,* Judge.

AFFIRMED.

*R. M. Nichols* for appellant.

(1) If there was a conflict of evidence as to intention in the execution of the written document, it was proper to submit the question of intention to the jury. There being no evidence that the parties did not intend an actual transfer, and the purpose of the parties in the execution and delivery of the written document being gathered exclusively from the construction of the instrument, the intention was a matter of law for the court, and not for the jury. The verdict was against the evidence. 1 Thompson on Trials, secs. 1065, 1096; Lockwood v. Ins. Co., 47 Mo. 50; Price v. Evans, 49 Mo. 396; Winson v. Radway, 45 Mo. App. 123; Northwestern F. Co. v. Danielson, 57 Fed. Rep. 915. (2) The first instruction violates the well-settled principle of the law, because it tells the jury that if they find it merely colorable and fictitious, and not intended by the parties as an actual transfer "but was merely designed and intended to relieve the said Keeley Real Estate Co. from liability for the payment of taxes under the lease," for the reason that it is the law that Keeley Real Estate Co. could make the assignment for the express purpose of avoiding liability for the payment of taxes under the lease. Tyler v. Giesler, 74 Mo. App. 543; Jones on L. & T., sec. 456; Wood on L. & T., sec. 340 (2 Ed.), and sec. 337 (3 Ed.); 18 Ency. Law, p. 674; Taylor v. Shum, 1 Bos. & T. 21; Johnson v. Sherman, 15 Cal. 287; Nat. Gas. Co. v. Johnson, 123 Pa. St. 576; McLean v. Caldwell, 107 Tenn. 138; Tibbals v. Iffland, 10 Wash. 451; Sharon Cong. Soc. v. Rix, 17 Atl. R. 719; 1 Wash. Real P. (2 Ed.), sec. 13, p. 438; Tait v. McCormick, 23 Hun (N. Y.) 218; Johnson v. Bates, 48 N. Y. Sup. Ct. 180. (3) The instruction violates the

law when it tells the jury that if they "further believe from the evidence that said Henry Kittrell never took actual possession of the premises covered by the lease" because it was not necessary for Henry Kittrell to take actual possession, and because the court in that part of the instruction submits to the jury the legal effect of the sub-lease of Henry Kittrell to Keeley Real Estate Co., which could be given by Kittrell upon no theory other than that he did take actual possession of the premises. Johnson v. Sherman, 15 Cal. 287; Taylor v. Shum, 1 Bos. & T. 21; Wood on L. & T. (1 Ed.), sec. 349; Tyler v. Giesler, 74 Mo. App. 543. (4) The part of the instruction "that said Keeley Real Estate Co. continued in beneficial use and enjoyment of the premises and received the rents due thereafter from subtenants in occupation of said premises" was given without any warrant in the evidence and in the face of the undisputed testimony that the defendant's possession was ascribable to the sublease from Kittrell. (5) The first instruction is misleading, and misstates the law to the jury. After telling the jury that the Keeley Real Estate Company admits that it became the assignee, the instruction further directs: "You are further instructed that by accepting said assignment said defendant became liable for the payment of taxes thereafter becoming due against the premises during the unexpired term of the lease." There is nothing in any part of the instructions given, to qualify this broad declaration. The next paragraph does not do it. It is entirely outside of the issues. The next paragraph is likewise a misstatement of the law, as much a misstatement of the law and as foreign to the issue as the direction that "Henry Kittrell never took actual possession of the premises." See authorities under the second and third points, supra. (6) The second instruction asked for plaintiff submits to the jury the following question of law; "And in determining whether or not the assignment . . . was an actual

transaction intended to vest the ownership and beneficial enjoyment of the leased premises according to its purport . . . . or whether said transaction was merely colorable or fictitious, designed solely to relieve Keeley Real Estate Co. from liability for the payment of taxes under the lease,'' and is contrary to the well-settled law, because there can be no fraud in an assignee assigning a lease to get rid of liability. Tyler v. Giesler, 74 Mo. App. 543; Jones on L. & T., sec. 456; Taylor v. Shum, 1 Bos. & T. 21; Tait v. McCormack, 23 Hun (N. Y.) 218; Underhill on L. &T. (Ed. of 1900), sec. 649, p. 1090. (7) The instruction that if the jury believed the assignment was ''merely colorable and fictitious'' was in effect submitting to the jury the question as to whether the assignment was fraudulent when there could be no fraud in the act. Railroad v. Alfree, 64 Io. 500; 7 Cyc., p. 400, tit. ''Color;'' Black's Law Dict., tit. ''Color'' and authorities cited. (8) There is no covenant against or regulating assignment. The lease could therefore be transferred at will. The assignments shown in evidence were sufficient to carry the title from Keeley Real Estate Co. to Kittrell. 2 Underhill on L. & T., p. 1050, sec. 1027; Clark v. Aldrich, 40 N. Y. 5440; Reid v. Werssiner & Son B. Co., 88 Mo. 234.

*Thomas S. Meng* for respondents.

GOODE, J.—An action on a covenant in a lease for taxes for the years 1906 and 1907, which the lessee and his assigns were bound by the covenant to pay. The defense is that defendant company is not in privity of estate with the original lessee and hence not bound by the covenant. Henry A. Cunningham was the original lessor, Geo. M. Keeley the original lessee, and the premises are two three-story buildings in the city of St. Louis on Chestnut street. The term was for twenty years commencing March 18, 1890, and expiring

March 18, 1910, at an annual rental of twelve hundred dollars for the first half of the term and thirteen hundred dollars for the remaining half, payable quarterly. Various covenants, some of them binding on the lessor and some on the lessee, are contained in the contract of lease, but we are not concerned with any but this one: "Said lessee agrees that as further rent for said premises, he will at all times during said term of said lease, pay all taxes, whether general or special, which may become due on said premises or any part thereof." We find no covenant forbidding or even referring to an assignment of the term, the twelfth clause merely authorizing the lessee to sublet the whole or part of the premises and binding the original lessee for all acts of the sublessee. The original lessor Cunningham, died in 1902, having devised the premises to plaintiffs; and the original lessee, George M. Keeley, died in 1904. The latter's personal representatives, Chas. Z. Trembley and Hannah Miller, who were the executor and executrix of his estate, assigned the remainder of the term on May 26, 1906, to Louis Jost for $2510, and on the same day Jost assigned the term to the Keeley Real Estate Company for the same consideration. No question was made about the validity of these assignments, which are mentioned as links in the chain of transfers leading to the title to the leasehold now held by the Keeley Real Estate Company. As will be perceived, it became the owner of the term and tenant of plaintiffs on May 26, 1906, by assignment from Louis Jost. Chas. Z. Trembley is president of the Keeley Real Estate Company, Hannah Miller its secretary and Louis Jost its vice-president. The company is out of business, but for eight years prior to 1906, was doing business at No. 1113 Chestnut street, one of the demised buildings. Prior to the final settlement of the estate of Geo. M. Keeley, and during the second half of the term of the leasehold, plaintiffs presented a demand in the probate court against his

estate for the cash rent which would accrue under the lease to the end of the term at the rate of thirteen hundred dollars a year. This demand included also the taxes for 1905 and was allowed by the probate court and by the circuit court on appeal, less a deduction or rebate for the unearned rent at the rate of six per cent per annum, and after allowance was paid. All the rent for the entire term, except taxes to accrue after 1905 having been thereby settled, the leasehold was a valuable asset of Keeley's estate and when sold by the executor and executrix, brought the price we have stated. To get rid of the taxes to accrue in the future and which, as assignee of the term, it would be bound to pay, the Keeley Real Estate Company on May 26, 1906, the day the lease was assigned to it by Louis Jost and the day it was assigned to Jost by the executor and executrix of the original lessee's estate, executed another assignment of the term to Henry Kittrell. This man was a negro ragpicker who lived on a vacant lot owned or controlled by Trembley, Hannah Miller or the Keeley Real Estate Company, in the west part of the city. Kittrell did odd jobs about town besides pursuing his vocation of ragpicker, and now and then worked for the persons interested in the Keeley Real Estate Company and was favored by them with small loans. The transaction with him occurred in this way: He entered the office of the Keeley Real Estate Company on May 26th; Mrs. Miller asked him if he wanted to make some money and he said he did; she then asked him if he had five dollars and he said he had. Thereupon she proposed to sell him the leasehold on the two buildings, Nos. 1111 and 1113 Chestnut street, for five dollars, stipulating that he should lease them immediately to to the Keeley Real Estate Company for ten dollars. To this proposition Kittrell assented, an assignment was made to him by the Keeley Real Estate Company, and he executed a lease back to said company of the premises for the whole unexpired part of

the term of the original lease except about eighteen days; that is, he gave a lease for forty-four months and fifteen days from May 26, 1906. Kittrell could not read and did not read either the assignment to him or the lease contract he executed to the Keeley Real Estate Company. The term thus created was to end February 10, 1910 and the rent exacted for the entire period was ten dollars. Kittrell, if one judges from the face of the instrument, was careful to exact covenants from the Keeley Real Estate Company, binding it not to suffer or commit any depredations on the premises nor use nor permit them to be used in any other manner than was specified, without his consent, to quit and deliver up possession to him at the end of the term, allow him to enter at any reasonable hours to inspect the premises, not permit dirt and rubbish to accumulate on them, etc. It is frankly avowed in behalf of defendant that these transfers were executed solely for the purpose of exonerating the Keeley Real Estate Company from the obligation to pay taxes on the premises which would fall due after 1905. Kittrell never went into occupation, though he remained in the office after the transfer for about an hour. Hannah Miller explained to him that he had not given back a lease for quite the full portion of the unexpired term of the Cunningham lease, but would have sixteen or eighteen days left after the expiration of the lease given by him to the Keeley Real Estate Company. When the attorney for plaintiffs demanded of the Keeley Real Estate Company payment of the taxes on the property for the years 1906 and 1907, said company refused to pay them, asserting it was exonerated from liability because it was in occupation of the premises as tenant of Henry Kittrell and not by virtue of an assignment of the original lease; hence was not in privity of estate with the original lessee, Geo. M. Keeley, or any one claiming under him. The attorney for plaintiffs

testified defendant's president told him Kittrell was a mere straw man in the transfers to and by him, and refused to tell where Kittrell was so the transaction could be investigated. Defendant's president testified he did not remember stating Kittrell was a straw man nor that he refused to inform plaintiffs' attorney of his whereabouts. Instructions were requested by plaintiffs and given by the court, the purport of which was that if the jury believed the written assignment from the Keeley Real Estate Company to Henry Kittrell was colorable and fictitious, not intended by the parties to operate as an actual transfer to Kittrell of the leasehold described in it, but merely to relieve the Keeley Real Estate Company from liability for the payment of taxes under the lease for the unexpired part of the term, and if the jury believed Kittrell never took possession of the premises under the assignment of the leasehold to him, but said company continued in the beneficial use and enjoyment and received the rents accruing from subtenants thereunder, then the assignment to Kittrell was of no force or validity as against plaintiffs and the Keeley Real Estate Company remained liable under the covenants of the lease to pay taxes. The purport of the instructions requested by defendant, all of which were refused by the court, was that if the jury found the Keeley Real Estate Company assigned the lease to Henry Kittrell on May 26, 1906, for the sum of five dollars, and further believed said Kittrell sublet the property to said company on the same day and the latter company occupied the premises under said sublease, then though the jury believed said company assigned said lease for the express purpose of ridding itself of liability under the lease to pay taxes, and further believed Henry Kittrell was insolvent, and believed the company in making the assignment to Kittrell and taking from him a sublease, retained a beneficial interest in the lease, nevertheless they must find for the defendant. Those opposed theo-

ries were presented in a series of requests, containing immaterial variations, and we need not set out the instructions given and refused in full. It will be perceived defendant's contention is, that defendant had a right to assign the lease to Kittrell, no matter if he was insolvent, and instantly take back a contract of lease from him in order to enable defendant to evade liability on the covenant to pay taxes. The right of an assignee of a leasehold to re-assign it to any one, solvent or insolvent, in order to get rid of burdensome covenants, appears to be supported by the books, subject to this qualification: There must be a valid assignment of the leasehold to the junior assignee with the intention that he shall become the tenant, and not a sham or bogus transfer, made with no intention for him to occupy the premises as tenant in lieu of his assignor, but intending rather that the latter shall remain in occupancy and enjoyment; for generally speaking continuance of possession by the assignor will continue his liability. Otherwise stated, the law permits an assignee of a leasehold to rid himself of liability for future breaches of the covenants of a lease by re-assignment, and this right is not limited by a requirement that he shall assign only to a responsible party. [Jones, L. & T., sec. 456; Wood, L. & T. (2 Ed.), sec. 340; Tyler v. Giesler, 74 Mo. App. 543; Taylor v. Shum, 1 Bos. & T. 21; Washington Nat'l Gas Co. v. Johnson, 123 Pa. St. 576; McLean v. Caldwell, 107 Tenn. 138.] Yet the transfer must be actual and not merely formal, with the assignor left in enjoyment and the parties intending the use of the premises shall not be transferred. The liabilty of the first assignee on the covenants of the lease for breaches occurring while he is in possession does not arise from a contract made by him wherein he bound himself by covenants, but from his having come into privity of estate with the original lessee by taking an assignment of the leasehold from the latter. Hence when the privity of estate is

sundered, the liability of the assignee of the covenants ceases. But the privity must be sundered to accomplish this result, and there is no sundering if the first assignee colludes with any person to make a wholly fictitious and colorable assignment, unaccompanied by change of possession or purpose that the second assignee shall be substituted as tenant of the premises; otherwise colorable assignments would be resorted to constantly by first assignees to evade onerous covenants and still use the premises. [2 Underhill, L. & T., sec. 649, p. 1091; 2 Platt, Leases, 413; Taylor v. Shum, supra; Knight v. Peachy, Ventus Rep. 329; Philpott v. Hoare, Ambler 380; Onslow v. Corrie, 2 Maddocks 345; Fagg v. Dobie, 3 Younge & Col. 96; Springer v. Loan Co., 202 Ill. 17; Trabue v. McAdames, 8 Bush. (Ky.) 74; Negley v. Morgan, 46 Pa. St. 281.] We might find it difficult to support the refusal of some of the instructions requested by defendant if there was any evidence for them to stand on; but only one conclusion of fact is possible, and it is that there was no real assignment of the term or any portion of it by the Keeley Real Estate Company to Henry Kittrell, but instead a form of assignment was gone through which was without substance. There was no change of possession which, under the circumstances present, is the fact most essential to the release of the defendant; the sublease was taken simultaneously and Kittrell did not want and had no use for the premises and did not know what he was about, further than that he was getting five dollars for a few minutes time. He said he did not read the documents, but knew there was nothing wrong in them because he did not believe "a lady like Mrs. Miller would cheat him." Because the assignment to him was a sham, and defendant really owned the original leasehold all the time and occupied the premises as tenant of plaintiffs without a moment's intermission, the judgment will be affirmed. All concur.