## HAWKINSON v. JOHNSTON.

## JOHNSTON v. HAWKINSON.

### Nos. 11939, 11943.

Circuit Court of Appeals, Eighth Circuit.

Sept. 22, 1941.

Writ of Certiorari Denied Dec. 15, 1941.

See 62 S.Ct. 365, 86 L.Ed. ——.

Rehearing Denied Oct. 11, 1941.

Maurice J. O'Sullivan, of Kansas City, Mo. (J. Francis O'Sullivan and John M. P. Miller, both of Kansas City, Mo., on the brief), for Axel Hawkinson.

Philip J. Close, of Kansas City, Mo. (Inghram D. Hook and Harry L. Thomas, both of Kansas City, Mo., on the brief), for George Gaston Johnston.

Before GARDNER and JOHNSEN, Circuit Judges, and COLLET, District Judge.

JOHNSEN, Circuit Judge.

Two principal questions are presented for determination: (1) Whether a repudiation of a lease and an abandonment of the premises, accompanied by a default in the payment of an instalment of rent, may constitute a total breach of the contract of lease, under the law of Missouri; and (2), if so, whether, for such a breach of a 99 year lease, having a remaining term of 67 years, the trial court erred in fixing the determinable or predictable period of damages, under the evidence in this case, at ten years. Some minor contentions also are raised by defendant, but we do not regard any of these as controlling, and they will therefore be referred to only briefly and incidentally.

The lease covered a vacant lot located at 1331 Walnut Street, in the city of Kansas City, Missouri. It was made in 1909, for a period of 99 years, between plaintiff's devisor, as owner, and defendant and his brother, as lessees. On the death of the owner, the lessees purchased a one-third interest in the title from one of the devisees. Plaintiff was the devisee of the other two-thirds interest. The lease provided for rent on an annual basis, payable quarterly. Plaintiff's two-thirds share of the rent for the unexpired term was $1,600 per annum. The lessees also were obligated to pay all taxes upon the property for the period of the lease.

The lessees occupied the property and apparently paid the rent and taxes to June 30, 1940. On June 14, 1940, they notified plaintiff in writing of their intention to surrender and abandon his interest in the premises on June 30, 1940. The next quarterly instalment of rent was due on July 1, 1940. Plaintiff promptly replied that a surrender would not be accepted and that he expected to hold the lessees liable for their full term. On June 25th, the lessees repeated their notice of intention to surrender on June 30th. On June 28th, plaintiff again advised the lessees that he would not accept a surrender, which he termed "inexcusable on any ground", and declared that he would enforce his legal rights against them. On June 30th, the lessees posted a notice on the property that they had surrendered and abandoned the premises to plaintiff. On July 3rd, plaintiff made demand for his share of the quarterly rent instalment due July 1st. The lessees denied liability for any further rent, and reasserted that they had surrendered and abandoned the property on June 30th.

On August 2, 1940, plaintiff brought this action against the resident co-lessee as de-

fendant,[1] alleging that it was certain and determinable that "performance of the terms of said lease could and would have been possible for a period of not less than thirty years from and after June 30, 1940", and that during that period, except for the repudiation, plaintiff would have received his $1,600 share of the annual lease rental and the benefit of the payment of the taxes upon the property. The prayer of the petition was for damages in the amount of the difference between plaintiff's rental share under the lease, for a thirty year period, and the reasonable rental value of his undivided interest during such period, commuted to its present value on a four per cent interest basis, and for a further sum equal to the present value of the taxes which, it was claimed, the lessees would, with reasonable certainty, have been obliged to pay upon plaintiff's undivided interest during that period.

The case was tried to the court without a jury. The trial court held that the repudiation constituted a total breach of the contract of lease, and that, under the evidence, damages were determinable or predictable with reasonable certainty for a period of ten years, and that plaintiff was accordingly entitled to recover, by reason of his loss of rent, an amount equal to his share of the lease obligation for a ten year period, less the reasonable rental value of the property during such period, commuted to its present value at four per cent compound interest, and, by reason of the failure to pay taxes, a further sum equal to the taxes which the lessees with reasonable certainty would have been required to pay during such ten year period, similarly commuted to its present value. Judgment was entered against defendant in the total amount of $13,357.52, from which he has appealed generally; and plaintiff has appealed from the refusal of the trial court to fix the determinable or predictable period of damages at more than ten years.

The first and principal question is whether, under the law of Missouri, a repudiation of a lease and an abandonment of the premises, accompanied by a refusal to pay an accrued instalment of rent, can constitute a total breach of the contract of lease. The courts of Missouri do not appear to have passed upon the precise point. The general doctrine of anticipatory breach by repudiation has, however, been clearly recognized in that state.[2] A majority of the courts in this country that have passed upon the question have applied the doctrine of total breach to an anticipatory repudiation or other unjustified refusal to perform some material, permeating provision of a contract of lease,[3] and the trial court held that, since there was nothing contrary to such a view in the expressions of the Missouri courts on the subject of anticipatory repudiation, it was proper to assume that Missouri would follow the general law.

Defendant argues, however, that, under Mo.Rev.St.1939, § 645,[4] the court was required to apply the English common law

---

[1] Jurisdiction rests on diversity of citizenship, plaintiff being a resident of the State of New York.

[2] See Restatement, Contracts, Mo.Ann., § 318; Claes & Lehenbeuter Manufacturing Co. v. McCord, 65 Mo.App. 507, 509; Eddington v. Cockrell, Mo.App., 286 S.W. 405; Edwards v. School District No. 73, 221 Mo.App. 47, 297 S.W. 1001; Wahl v. Cunningham, 320 Mo. 57, 6 S.W.2d 576, 67 A.L.R. 489. Producers' Packing Co. v. Fisher, 221 Mo.App. 639, 283 S.W. 747, by implication, may possibly be said to recognize the repudiation of a lease as a total breach.

[3] Total breach by anticipatory repudiation of a contract of lease appears to be recognized in Alabama, Arkansas, Delaware, Kansas, Louisiana, Michigan, Mississippi, North Carolina, Oklahoma, South Carolina, Texas, Washington, and probably Iowa, Minnesota and Oregon. In the Kansas and Michigan cases there had been a reletting for the balance of the original term. In Connecticut repudiation has been held to give rise to a total breach, if there has also been an actual default in payment of rent. Anticipatory breach of a lease contract is not recognized in California, Colorado, Georgia, Illinois, Massachusetts, New York, Ohio, and Virginia, and probably not in Idaho, Maine and Wisconsin.

[4] This section provides in part: "The common law of England and all statutes and acts of parliament made prior to the fourth year of the reign of James the First, and which are of a general nature, not local to that kingdom, which common law and statutes are not repugnant to or inconsistent with the Constitution of the United States, the Constitution of this state, or the statute laws in force for the time being, shall be the rule of action and decision in this state, any custom or usage to the contrary notwithstanding * * *."

as it existed in 1607, and that the common law of that date recognized no right of total breach by anticipatory repudiation of a contract of lease. So far as judicial precedents are concerned, the doctrine of anticipatory breach, as applied to contracts generally, probably cannot be regarded as having become a definitely settled part of the English law until the decision in Hochster v. De La Tour,[5] in 1853. Certainly, there is nothing in the Missouri decisions, that purports to have adopted the doctrine of anticipatory breach in that state on the basis of it having been a settled part of the common law in 1607. And, as to contracts of lease, we have been cited to no case, and our research has discovered none, that authoritatively establishes that the common law, as it existed in 1607, had definitely settled that there could be no anticipatory breach of such a contract. The statement has some times been made in later authorities that such was the rule of the common law,[6] but our reading of the early cases tends to indicate that the whole field of instalment payment contracts and their breach was for a long time in a state of varying confusion.

Some of the English common law judges regarded any recovery on a fixed obligation for the payment of money, whether payable in instalments or not, as a mere recovery of the debt itself, and so sought to adhere to the view that the action had to be in the form of debt, which could only be brought after the entire obligation had become due in accordance with its terms. To them, there could be no breach for failure to pay the debt, until the contract itself made the debt specifically due. Others seemingly recognized a distinction between the rigid action of debt and the more flexible remedy of assumpsit to recover damages for a material breach, based on the value of the whole performance to be rendered. During this pendulum period, some of the judges appear at one time to have held that any default in an instalment payment would justify an action of assumpsit for total breach.[7]

Out of this conflict and confusion, there naturally emerged a gradual crystallization, with qualifications, of the general rule as to total breach of a contract. So far as a contract of lease is concerned, within the purview of Mo.Rev.St.1939, § 645, quoted above, we certainly are not required to say, nor are we able to do so, that it was settled common law in 1607 that there could be no anticipatory repudiation of such a contract. We know that in 1827 the King's Bench recognized an anticipatory repudiation of an agreement to make a lease, as a total breach.[8]

But, even if it were possible to point to an express decision by an English court, as of 1607 or that approximate period, holding that there could be no anticipatory repudiation of a contract of lease, this would not be wholly conclusive of the question under the Missouri statute. The Missouri courts have recognized the difficulty of accurately defining the common law of such an early date from the meager precedents that are available, throughout the several courts, and have declared that, in their attempt to ascertain it, they were at liberty to "look to the decisions of other states of the Union as well as to those of the English courts", and, further, that they were not necessarily "required to adhere to the decisions of the English common law courts rendered prior to the Revolution, or subsequently".[9] They also early made the practical construction of the Missouri statute that, "Although we adopted the common law without the qualification that it be applicable to our condition, the courts would be at liberty to declare that any portion of the common law inapplicable to our condition and circumstances, does not obtain here".[10]

The general common law rule as to anticipatory repudiation that has emerged from its evolutionary crystalliza-

[5] 22 L.J.Q.B. 455, 2 El. & Bl. 678.

[6] See People v. West Town State Bank, 373 Ill. 106, 25 N.E.2d 509, 512; In re McAllister-Mohler Co., D.C.S.D. Ohio, 46 F.2d 91, 95; Wells v. Twenty-First Street Realty Co., 6 Cir., 12 F.2d 237; 46 Harv.Law Rev. 1117.

[7] See 5 Williston on Contracts, Revised Edition, § 1290, note 3; and comments

of Lord Loughborough in Rudder v. Price, 1 H.Bl. 547, 552.

[8] Ford v. Tiley, 6 B. & C. 325, 5 L.J. K.B. 169.

[9] Dickey v. Volker, 321 Mo. 235, 11 S.W.2d 278, 285, 62 A.L.R. 858.

[10] Duke v. Harper, 66 Mo. 51, 27 Am. Rep. 314.

tion, in its here applicable portion, is set out in the Restatement as follows: "Except in the cases of a contract originally unilateral and not conditional on some future performance by the promisee, and of a contract originally bilateral that has become unilateral and similarly unconditional by full performance by one party, any of the following acts, done without justification by a promisor in a contract before he has committed a breach under the rules stated in §§ 314–315, constitutes an anticipatory repudiation which is a total breach of contract: (a) A positive statement to the promisee or other person having a right under the contract, indicating that the promisor will not or cannot substantially perform his contractual duties; * * *."[11]

The Missouri courts have used substantially equivalent language. In Allen v. National Life & Accident Insurance Co., 228 Mo.App. 450, 67 S.W.2d 534, it was said: "* * * where the contract is mutually executory, at least in part, and there are interdependent covenants to be simultaneously performed, a repudiation or renunciation of the contract, on the part of one, covering the entire performance, before the time of performance, is such a breach as gives immediate right of action for the entire damages arising as a result of the breach; but where one party has completely executed his part of the contract and it is executory on the part of the other party only, or where the contract is unilateral or it is bilateral but contains an independent promise, such as a contract with respect to the payment of money at specified times, in case of repudiation a suit may be maintained only for each installment as it becomes due, or, if action is not brought until more than one installment is due, then all that are due may be sued for in one action." Similarly, in Leon v. Barnsdall Zinc Co., 309 Mo. 276, 274 S.W. 699, 703, the court declared: "That doctrine [anticipatory repudiation] * * * applies * * * to contracts which are at least in part mutually executory, where there are interdependent obligations. It cannot be invoked with respect to contracts to pay money at specified times, where one of the parties has completely executed the contract, and it is executory only on the part of the other party."[12]

The Restatement does not purport to except contracts of lease from the operation of the general rule which it sets out, either by its language or in its comments, if they are otherwise within the conditions and qualifications prescribed, nor is there anything in the expressions of the Missouri courts to indicate such an intention. As a matter of sound practicality, and ignoring the spirit of mere legalistic negation and artificial differentiation, there is no reason to attempt to draw a distinction. The rationale underlying the rule as declared in Hochster v. De La Tour, supra, certainly is as fairly applicable to contracts of lease as to other general contracts: "The man who wrongfully renounces a contract into which he has deliberately entered cannot justly complain if he is immediately sued for a compensation in damages by the man whom he has injured: and it seems reasonable to allow an option to the injured party, either to sue immediately, or to wait till the time when the act was to be done, still holding it as prospectively binding for the exercise of this option, which may be advantageous to the innocent party, and cannot be prejudicial to the wrongdoer."[13]

The real sanctity of any contract rests only in the mutual willingness of the parties to perform. Where this willingness ceases to exist, any attempt to prolong or preserve the status between them will usually be unsatisfactory and mechanical. Generally speaking, it is far better in such a situation, for the individuals and for society, that the rights and obligations between them should be promptly and definitely settled, if the injured party so desires, unless there is some provision in the contract that, as a matter of mutual intention, can be said to prevent this from being done. The commercial world has long since learned the desirability of fixing its liabilities and losses as quickly as possible, and the law similarly needs to remind

---

[11] Restatement, Contracts, § 318.

[12] In Wahl v. Cunningham, 320 Mo. 57, 6 S.W.2d 576, 67 A.L.R. 489, however, where defendant had agreed to indemnify plaintiff at a certain time for any loss he might sustain by obtaining funds and advancing them to defendant's bank, plaintiff was permitted to recover for an anticipatory repudiation, notwithstanding the agreement at the time had become wholly unilateral.

[13] 22 L.J.Q.B. at page 458.

itself that, to be useful, it too must seek to be practical.

■ We hold that, within the conditions and qualifications of the rule applied to general contracts under the Missouri decisions, the doctrine of total breach by anticipatory repudiation is applicable to contracts of lease in that state. This is sufficient to sustain plaintiff's right to sue in the present case. The contract of lease here was in part still executory on the part of plaintiff, since he was obligated by specific and continuing covenants to assure the quiet enjoyment of the premises during the term of the lease, and, also, at all times to defend the title. These covenants were in a sufficient sense interdependent with the lessees' obligation to pay rent, since the payment of rent at any particular time necessarily was conditional on their continued performance. By the provisions of the lease, this obligation of the original lessor was specifically made to devolve upon plaintiff as assignee or devisee.

■ While the trial court properly disposed of the case on the strict theory of anticipatory repudiation, it might perhaps have adopted a broader applicable theory, which is recognized by the Restatement, by Williston, and by some of the decisions. The original repudiation and abandonment here constituted, of course, purely an anticipatory breach, since there was at the time apparently no default under the contract. When on July 1st, however, the lessees refused to pay the instalment of rent that became due, and still adhered to and repeated their repudiation, there then existed more than a technical anticipatory breach.[14]

■ The rule applied by the Restatement and by Williston to such a situation is that, except in the case of a unilateral contract, or a bilateral contract that has been wholly performed on one side, for the payment of money instalments or for the performance of other acts, not connected with one another by a condition having reference to more than one of them or otherwise, any breach of a contract is total if it is accompanied by a positive repudiation of the entire contractual obligation.[15] While the observation has been made that there would appear to be no "controlling distinction" [16] between the two classes of cases, both the Restatement and Williston imply a more liberal interpretation and application of the rule relating to an actual breach in performance accompanied by a repudiation,[17] than of the rule involving a technical anticipatory repudiation alone. But it is not necessary here to deal further with this distinction.

■ The second question for consideration is whether the trial court erred in fixing the determinable or predictable period, for damage purposes, at ten years. We think not. There was competent evidence from which it could be inferred with reasonable certainty or probability that the rental value of the property and the amount of taxes payable under community conditions and locational situation for the next ten years could be expected to remain fairly stable. The rental returns for a long period of years, the taxes assessed against the property for the preceding eight years, community conditions and locational situation, together with the opinions of experts, were all before the court. The parties expressly stipulated that the present reasonable rental value of plaintiff's interest in the property did not exceed $450. In this situation, the question as to the amount of the damages was properly a matter for the judgment of the trial court, under all the evidence, just as it would have been for

---

[14] "Strictly an anticipatory breach is one committed before the time has come when there is a present duty of performance." Per Cardozo, J., in New York Life Insurance Co. v. Viglas, 297 U.S. 672, 56 S.Ct. 615, 618, 80 L.Ed. 971. See also Restatement, Contracts, § 318, Comment (b).

[15] Restatement, Contracts, §§ 316, 317, 318; 5 Williston on Contracts, Revised Edition, § 1317, pp. 3714-3716. Producers' Packing Co. v. Fisher, 221 Mo. App. 639, 283 S.W. 747, may perhaps be said by implication to recognize a right to sue for total breach of a lease in such a situation.

[16] Per Fuller, C. J., in Roehm v. Horst, 178 U.S. 1, 19, 20 S.Ct. 780, 44 L.Ed. 953.

[17] Thus, Williston appears to regard as sound a holding of the Connecticut court that a total breach may exist in such a case even though a mere anticipatory breach alone would not have been recognized. 5 Williston on Contracts, 1941 Cum.Supp., § 1317, citing In re Edgewood Park Junior College, Inc., 123 Conn. 74, 192 A. 561. See also Sagamore Corporation v. Willcutt, 120 Conn. 315, 180 A. 464.

a jury; and we think the evidence warranted the conclusion which the court reached. The interest rate adopted in computing the present value of the amount of the recovery was sufficiently supported by the evidence, and no specific complaint is made on this point.

It will of course generally be argued in a case of this character, as it is here, that any period of definite forecast or certain predictability attempted to be fixed by the trial court is arbitrary and excessive. But the rule for determining the damages in such a situation is no different than in any other case. The damages are not speculative merely because they cannot be computed with mathematical exactness, if under the evidence they are capable of reasonable approximation. Obviously there is not, nor can there be a fixed, uniform period for which damages should be allowed in every case of total breach of a long term lease, but the period for which the damages can be reasonably forecast or soundly predicted in such a situation must depend upon the circumstances and evidence of the particular case. Thus, in Palmer v. Connecticut Railway & Lighting Co., 311 U.S. 544, 61 S.Ct. 379, 85 L.Ed. 336, damages were allowed in a bankruptcy proceeding, on an unexpired term of 969 years, for an eleven year period, three of which had already passed at the time of trial.

The Missouri courts have recognized that "The rule that damages which are uncertain or contingent cannot be recovered does not embrace an uncertainty as to the value of the benefit or gain to be derived from the performance of the contract, but an uncertainty or contingency as to whether such gain or benefit would be derived at all. It only applies to such damages as are not the certain result of the breach, and not to such as are the certain result, but uncertain in amount." [18]

This is the same test that was applied in Palmer v. Connecticut Railway & Lighting Co., supra, page 561 of 311 U.S., page 385 of 61 S.Ct:, 85 L.Ed. 336, where the court said: "Certainty in the fact of damage is essential. Certainty as to the amount goes no further than to require a basis for a reasoned conclusion. The certainty of the evidence as to damages for rejection of a lease depends upon the same tests as in other situations where damages are difficult of proof."

Plaintiff argues on his cross-appeal that, under the testimony of the expert witnesses which he produced, and to which defendant offered no opposing experts, the court should have fixed the predictable damage period at not less than fifteen years. But the trial court was not required to accept at face value the opinion of the expert witnesses as to future rental returns and tax valuations. The weight to be given purely opinion evidence is always a matter for the appraisal and judgment of the trial court or jury, in the light of all the circumstances of the particular situation.[19]

Defendant has argued a number of other contentions, with which we are unable to agree, and which require only a brief discussion. Thus, he contends that his abandonment of the property and his refusal to continue performance of the lease were not an actionable repudiation, but a justifiable surrender. The argument seeks to ground itself on a covenant in the lease, which required the lessees to erect a building upon the property within five years from the commencement of the term, and which further provided that "after the new building shall have been constructed, the personal liability of the lessees hereunder may be terminated by lessees having complied with all the terms and conditions of this lease which at that time lessees shall have agreed to perform, and by the lessees surrendering to the lessor the premises, the improvements thereon and the possession thereof." The building was never erected, but plaintiff failed to bring an action upon the covenant until the statute of limitations had run against the obligation. When he attempted to sue, the court dismissed his action on the ground that it was barred by the statute of limitations.

Defendant argues that this left the situation the same as if the building had actually been erected, and entitled him to make a surrender accordingly. But it would indeed be the sheerest legal fiction

[18] Hiatt Investment Co. v. Buehler, 225 Mo.App. 151, 16 S.W.2d 219, 225, quoting with approval from Blagen v. Thompson, 23 Or. 239, 254, 31 P. 647, 652, 18 L.R.A. 315.

[19] Thompson v. Ish, 99 Mo. 160, 12 S.W. 510, 515, 17 Am.St.Rep. 552; Sheldon v. Metro-Goldwyn Pictures Corp., 309 U.S. 390, 60 S.Ct. 681, 84 L.Ed. 825.

to assert that the effect of the statute of limitations was to perform the lessees' obligation to erect a building. The statute neither changed the terms of the contract nor satisfied its obligations: it merely made the building covenant unenforcible on the part of plaintiff, as a basis for relief in specific performance or damages.[20] Insofar as the erection of the building was made a condition of the lessees' right to surrender, clearly no valid surrender could be made under the contract until the building was erected and the condition was actually performed. "A contract covering a certain period of time, but containing a conditional provision that it might be terminated before that time, will remain effective the full term, unless the condition of termination is fully complied with." [21] The unjustifiable refusal of the lessees to recognize any further obligation on the lease, and their unwarranted attempt to abandon the premises on this basis, constituted, under the circumstances of the case, a repudiation of the contract. This viewpoint controls all of defendant's other arguments with respect to his alleged right to surrender. Necessarily, also, the attempt of the lessees to merge part of the lease and the fee, by the purchase of a one-third interest in the property from plaintiff's co-devisee, could not operate to defeat the remaining obligations on the lease in favor of plaintiff.

■ Defendant further argues that plaintiff's actions in the situation amounted to an acceptance of surrender, and so precluded a suit for repudiation. We find nothing in the evidence that compels or merits this construction. Plaintiff, from the start, had notified the lessees that he would not accept a surrender, and had advised them in effect that their inexcusable attempt to abandon the premises and their unjustifiable refusal further to perform the obligations of the lease would be regarded as a repudiation. He had informed defendant, after the abandonment, that he would be willing to work out some arrangement to lease the premises in order to minimize the damages, but that "any such arrangement will, of course, be with full reservation of his rights against you". Such an arrangement was finally agreed upon, for a leasing of the premises to a third party, "without waiver of the respective rights of the parties." There is nothing in any of these actions, or in the institution of a suit for damages in harmony with them, that must or can be held to have consummated a surrender, as a matter of necessary legal implication.[22] Plaintiff's whole course, on the contrary, was a studied effort to preserve his legal rights on the contract, and to avoid any act that could be declared to be inconsistent with them.

The views herein expressed control defendant's remaining contentions, and there is no need to discuss them further.

The judgment of the trial court should be and is affirmed.[23]

---

[20] Loewenstein v. Queen Insurance Co., 227 Mo. 100, 127 S.W. 72, 77.

[21] Home Insurance Co. v. Hamilton, 143 Mo.App. 237, 128 S.W. 273, 274. See also Leon v. Barnsdall Zinc Co., 309 Mo. 276, 274 S.W. 699, 702.

[22] Compare Von Schleinitz v. North Hotel Co., 323 Mo. 1110, 23 S.W.2d 64.

[23] To the writer it would logically seem that, where a lease gives full control of the property to the lessee, and so contemplates that the lessor shall be relieved of the supervisory burden which ownership otherwise naturally imposes, the obligation which is thereby implied on the part of the lessee, and the obvious detriment which repudiation and abandonment will produce to the lessor, should be treated as making the contract more than a mere obligation for the payment of instalments of rent monies, and that the lessor should accordingly be permitted to sue for total breach on such an abandonment and repudiation and a default in payment of rent, regardless of whether there is any executory obligation remaining on his part that will bring the situation within the technical application of the general doctrine of total breach by anticipatory repudiation discussed above. In the present case, however, the situation properly is within the conditions of the general rule announced by the Missouri courts, and there is, of course, no need or right to go farther.