Henry M. ADKINS, Appellant,

v.

HOBSON & SON, INC., Respondent.

No. WD34118.

Missouri Court of Appeals,
Western District.

Feb. 21, 1984.

George R. Lilleston, Clinton, for appellant.

John A. Sanders, Clinton, for respondent.

Before CLARK, P.J., and DIXON and NUGENT, JJ.

DIXON, Judge.

Adkins appeals a judgment in his favor for $1,530 for damages arising from the

failure of Hobson & Son, Inc., to make lease payments pursuant to a written lease. Adkins contends the judgment should have been for the remainder of the term of the lease in the amount of $8,670. Two issues are presented. The first involves the applicability of the theory of anticipatory repudiation to a lease contract. The second concerns the options otherwise available to a landlord upon the tenant's default.

On April 8, 1980, Hobson & Sons, Inc., leased from Adkins a building to house Hobson's furniture and carpet business in Clinton, Missouri. Hobson agreed to pay Adkins $510 per month for the three-year period of May 1, 1980, to April 30, 1983. The rentals were paid for the period ending October 31, 1981, but at the time of trial (August 4, 1982) no further payments had been made.

The principal factual dispute involves the conditions of the leased premises during 1981. The parties had previously entered into a lease on March 20, 1979, which, except for the rental payments, was identical in its terms to the April 1980 lease. Pursuant to the March 1979 agreement, Adkins paid Clinton Roofing Co. $2,500 in September 1979 for repairs to the roof of the leased building. Carroll Hobson, president of Hobson & Son, testified that the people who repaired the roof had told him that the repairs were merely a coverup job and that the repairs would not prevent leaks.

The evidence is conflicting as to whether the leaky roof caused damage to Hobson's inventory stored in the building. Carroll Hobson testified that the repairs did not stop the leaks, and that during the spring and summer months of 1981, the roof leaked to the point that the building became unfit to store furniture. Jim Martin, a former employee of Hobson and the purchaser of the Hobson corporate assets, confirmed that the building could not be used on or about August 1981 because of water problems within the building. When Martin purchased the business, he did not as-

sume the lease. Carroll Hobson claimed leaks from the rain rendered the second floor and the basement unusable. However, Carroll Hobson did not personally visit the building in 1981 but relied on his employees' statements regarding the leaks. Martin was not exactly sure at what date he discerned the water problems that caused him to move the furniture to another warehouse after purchasing the business assets of Hobson's furniture operation in August 1981.

Adkins's version paints quite a different picture. Adkins testified that he inspected the premises in November 1981 and, apart from the trash and debris left in the building, found no water damage on any of the three floors of the building. In the spring of 1982 he again inspected the building, this time after the heavy rains that fell during that period. He found water amounting to "two or three little cups" on the second floor. There was a broken window on that floor. He found a "drop or two" on the basement floor that he alleged could have come from a leaky pipe on that floor.

Two other witnesses for Adkins corroborated his testimony. Dixie Collins, Adkins's secretary, testified that she, her husband, and Adkins inspected the building during a rainy day in the spring of 1982. She stated that they found no water leaks at that time. Mr. Tom Skaggs, a local real estate broker, inspected the building with Adkins on June 16, 1982, and found about a square foot water spot under the broken-out window on the second floor and only a little dampness, but no running water, in the basement.

One fact, however, is uncontradicted. It was in October 1981 that Carroll Hobson notified Adkins that Hobson was vacating the premises because of the alleged water problems. Carroll Hobson himself testified that before that time he never contacted Adkins about any leakage problems but assumed that his furniture manager had done so.

Carroll Hobson stated that he contacted Adkins in October 1981 and asked Adkins what he would settle for but Hobson refused the offer. Adkins told Carroll Hobson that Hobson could sublet the premises but Hobson said that repairs were needed before anyone would rent the building. Adkins denied any water problems existed. Carroll Hobson thereafter refused to pay the rent for the building and continued to do so until trial on August 4, 1982. The parties had two discussions after the October 1981 exchange, at each of which Carroll Hobson reiterated that the building could not be used because of the moisture problems.

Review of the trial court judgment is governed by Rule 73.01, in that the judgment should be sustained "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)

■ Neither party made a specific request for findings of fact or conclusions of law, though they were entitled to both upon timely request. Rule 73.01(a)(2). The trial court made an oral statement at the conclusion of the evidence. Findings not "requested are in the nature of voluntary statements by the court, are not reviewable and present no question for review, other than as a general finding ...," *Swetnam v. U.S. By-Products Corporation*, 510 S.W.2d 829, 830 (Mo.App.1974), quoting *Conley v. Crown Coach Co.*, 348 Mo. 1243, 159 S.W.2d 281, 285 (1942). General findings are nothing more than the judgment of the trial court and are subject to the standard of *Murphy v. Carron, supra*, noted above.

Resolution of this appeal requires separate consideration of two related issues. The first issue is the trial court's basis for awarding damages of $1,530, three months rent under the lease agreement. Adkins argues that the judgment is insufficient under the theory of anticipatory repudiation. Hobson counters by arguing that there was a constructive eviction and that no judgment beyond that entered was proper.

Both Hobson and Adkins have approached the case without any consideration of the pleadings. The judgment likewise ignores the pleading by Adkins, which sought recovery in two counts. Count I of the petition was framed in terms of a recovery of rent due and unpaid under the lease from October 31st, 1981, to the date of filing. Count II predicated recovery of future rents on a theory of anticipatory repudiation of the contract by Hobson.

The damages awarded by the trial court in favor of Adkins are not responsive to either theory pleaded by Adkins. At trial ten months rent was due and under Count I a judgment in favor of Adkins should have been for the number of months rent then due and unpaid. A judgment under the theory of anticipatory repudiation in favor of Adkins would not have been couched in terms of a number of months rent but would have been a judgment expressing in a dollar amount the damages to Adkins for the breach of the remaining term of the lease.

No Missouri decision has specifically held that the theory of anticipatory repudiation is applicable to a breach of a lease agreement. A case frequently cited by other jurisdictions as significant federal precedent, and cited by Adkins as authority for his claim under this theory, is *Hawkinson v. Johnston*, 122 F.2d 724 (8th Cir.), *cert. denied*, 314 U.S. 694, 62 S.Ct. 365, 86 L.Ed. 555 (1941). In that case, the tenant abandoned the premises on which he held a 99-year lease. The court stated that the principal issue was whether, under Missouri law, a repudiation of a lease and abandonment of the premises could constitute a total breach of the lease contract, noting that the Missouri courts had not yet decided that issue. *Hawkinson, supra*, 122

F.2d at 727. After discussing in some detail the Missouri decisions recognizing anticipatory repudiation as a remedy generally for breach of contract, the court held that total breach by anticipatory repudiation was applicable to lease contracts. *Hawkinson, supra,* 122 F.2d at 730. The trial court, affirmed on appeal, awarded the rents due for a ten-year period less the reasonable rental value of the property for that period, discounted to present value. *Hawkinson, supra,* 122 F.2d at 727. The theory of anticipatory repudiation, as well as the damage computation used in *Hawkinson,* have been recognized by a number of states as applicable to lease contracts upon tenant abandonment. *See* R. Schoshinski, *American Law of Landlord and Tenant* § 10.15 (1980); *see generally* 4 A. Corbin, *Corbin on Contracts* § 986 (1951); 11 W. Jaegar, *Williston on Contracts* § 1327 (3rd ed. 1968).

■ No evidence of the fair rental value of the property, a necessary element in measuring damages under that theory, appears in the record. Having failed to offer any proof of damages under the theory upon which Count II was based, Adkins cannot complain of the failure to award any damages upon this count of the petition. *Pallardy v. Link's Landing, Inc.,* 536 S.W.2d 512 (Mo.App.1976).

■ Adverting to Hobson's claim that a constructive eviction occurred, it must fail because of the ultimate finding implicit in the judgment rendered that some rent was owed beyond October 31. If the trial court had accepted this defense, it could have granted Adkins a judgment for the rental for the time Hobson occupied the premises, but not afterwards. *Wulff v. Washington,* 631 S.W.2d 109 (Mo.App.1982). The trial court could not have found the facts to support the defense and entered any judgment for Adkins. So viewed, the judgment for Adkins precludes the defense of constructive eviction. The evidence is sufficient to support a finding against Hobson on this issue, and Hobson's claim of a constructive eviction must fail.

The second issue to be decided is the application of the law expressed in *Babcock v. Rieger,* 76 S.W.2d 731, (Mo.App.1934), that the parties agree sets forth the options available to a landlord upon default by the tenant. In *Babcock,* the court expressly accepted as a correct statement of the law counsel's assertion of the options set forth in the opinion as follows:

Option 1.—To remain out of possession, treat term as subsisting, and recover rent.

Option 2.—Give notice to tenant, resume possession and relet to mitigate damages, collecting loss from tenant.

Option 3.—Re-enter, resume possession in own right and close the term. If no notice is given and landlord resumes possession, he is deemed to be doing so to terminate the lease.

*Babcock, supra,* 76 S.W.2d at 735.

Before considering the contentions of the parties, it should be noted that the statement of options in *Babcock* makes no mention of anticipatory repudiation and its ancillary rule of computing damages for the remainder of the term. The first option of *Babcock* contemplates a recovery of the rent in full by the landlord awaiting termination of the lease and then suing for unpaid rent.

■ Adkins argues that he remained out of possession and treated the lease as subsisting. He contends the trial court erred only in its calculation of damages. Adkins argues that despite the suit being brought before the end of the term, he is entitled to a full recovery of rent for the entire term. In his argument Adkins confuses the *Babcock* option to remain out of possession and the rule of anticipatory repudiation that permits a termination of the tenant's rights before the end of the term and a determination of damages for breach based on the difference between fair rental value, regardless of reletting, and the full amount

of lease rent. Adkins's attempts to engraft a full recovery for the lease payments based on a theory of anticipatory repudiation is inconsistent with Option 1 as applied to lease payments falling due after suit was brought.

In arguing that Option 2 applies, Hobson claims that in attempting to relet the premises, Adkins had to resume possession. Not only is no authority cited for this proposition but it also is unsupported by the evidence. The record shows that Adkins reentered the leased premises on a few occasions to make inspections after Hobson had abandoned the building. Adkins testified that as of the day of trial Hobson continued to lease the building and that the building was still available for Hobson's use. Carroll Hobson did not deny that the building was still available, contending only that he had surrendered the building to Adkins and that leaks prevented the building from being sublet. The evidence fails to support a finding of Adkins' possession. In addition, Hobson asserts that the award of three months rent represents a reasonable time to clean up the building and find a new tenant and is therefore a proper measure of damages under Option 2. However, that option assumes that the premises are relet and that the landlord will still receive the benefits of the original lease. The "loss from tenant" in Option 2 refers to the difference between the rental due from the original lessee and the rental collection from the substituted lessee.

■ In sum, not only is the damage award inconsistent with Option 2 but there is also no substantial evidence to support a finding that Adkins resumed possession of the premises.

■ Alternatively, Hobson urges that Option 3 was applied by the trial court in that the reentry by Adkins, together with a resumption of possession, operates to terminate the lease. As noted above, the evidence does not support a finding that Adkins resumed possession of the building.

Apart from that consideration, the evidence additionally fails to establish a termination of the lease. What was said by this court in *Gruber v. Adler*, 600 S.W.2d 669, 672 (Mo.App.1980), applies to the instant case:

> The evidence abundantly shows a surrender by the tenant. However, a lease cannot be terminated and canceled by the mere unilateral act of surrender by the tenant, but before such a cancellation can be effected there must be in addition an acceptance on the part of the landlord. The burden of proving such an acceptance rested upon defendant, as the one asserting surrender and acceptance.

(citations omitted). In that case the tenant argued that the landlord's reentry upon the premises and attempts to relet amounted to an acceptance. After noting that the lease contained a clause that could be read as granting the right to reenter and relet and that under the law such actions would therefore not be held to be an acceptance, the court also considered the result absent the clause:

> Even if the present lease were said to be deficiently short of the standard reentry and reletting clause, nevertheless the entry and attempt to relet in this case was not an acceptance of the surrender, because the parties understood that the reentry and attempt to relet was for the tenant's benefit and was not to release him from a continuing obligation for the rent. This was admitted by defendant's own testimony when he agreed that he had asked plaintiff to sublease on his (the defendant's) behalf. Moreover, the evidence on behalf of plaintiff showed without contradiction that plaintiff expressly notified defendant that he would remain liable for unpaid rent if reletting proved unsuccessful. Such notice precludes a finding of acceptance.... Ample authority exits [*sic*] that a reentry by the landlord without notice to the tenant plus a reletting by the landlord adds up to a surrender by operation of law. However, that same result does not fol-

low if the landlord merely makes an attempt to relet without being successful in so doing.

*Gruber, supra,* 600 S.W.2d at 672. (citations omitted). In the instant case Carroll Hobson testified that he told Adkins that he wanted to sublet the premises, having declined a settlement amount offered by Adkins. Efforts to relet the premises were unavailing. There is no direct evidence that the reentry and attempts to relet were for Hobson's benefit, but the evidence likewise does not show that Adkins accepted Hobson's alleged surrender. Because Hobson has failed to meet his burden, his claim that Option 3 applies is also denied.

Finally, Hobson claims that the judgment is correct because the court found Adkins should have mitigated his damages. The lessor does not have a duty to mitigate damages when a recovery is sought for unpaid rent under the first option set forth in *Babcock. Hurwitz v. Kohm,* 516 S.W.2d 33 (Mo.App.1974). *See also Rhoden Investment Co., Inc. v. Sears, Roebuck & Co.,* 499 S.W.2d 375 (Mo.1973).

■ This leaves for determination the issue of the propriety of the judgment under the first count of plaintiff's petition. As previously noted, there is no evidence to support the judgment under Count II. It must be concluded that the judgment is erroneous as a matter of law in its assessment of three months rent. Since the judgment precludes a finding of constructive eviction and the evidence will not support a finding of termination or reletting, the judgment should be for the rent due on the date of judgment, August 4, 1982.

The judgment under the law and the evidence should have been for ten months rent then unpaid, or $5,100. The cause is reversed and remanded to the trial court with directions to enter judgment for the appellant Adkins for $5,100 with interest from August 4, 1982, on Count I of the petition, and for the respondent Hobson on Count II of the petition.

All concur.