**JACK BURTON MANAGEMENT CO., Plaintiff,**

v.

**AMERICAN NATIONAL INSURANCE CO., Defendant.**

**No. 4:98CV1271–DJS.**

United States District Court, E.D. Missouri, Eastern Division.

Aug. 27, 1999.

---

Thomas P. Hohenstein, Harold S. Goodman, Gallop and Johnson, St. Louis, MO, for Plaintiff.

Byron E. Francis, Armstrong Teasdale, LLP, St. Louis, MO, for Defendant.

### ORDER

STOHR, District Judge.

Plaintiff's first amended complaint seeks damages from defendant for an alleged breach of a long-term sublease. Plaintiff is itself the lessee of the subject property ("the property")—a paved lot located at 1118, 1120 and 1122 Olive Boulevard in the City of St. Louis—for a 99–year term commencing June 10, 1954. On November 22, 1968, plaintiff subleased the property for a term of 40 years to Gilroy, Sims & Associates, which constructed and owned the building adjacent to the property located at 210 N. Tucker. The sublease obligated Gilroy to pay plaintiff rent, pay the real estate taxes on the property, maintain property and liability insurance, and maintain and repair the property.

As of May 7, 1991, defendant acquired Gilroy's leasehold interest by way of foreclosure on a defaulted loan. From 1991 through January 1998, defendant performed under the sublease. After selling the building next door at 210 N. Tucker in November 1997, defendant claimed it had no further obligation under the "month to month" lease of the property. Plaintiff seeks damages in the amounts allegedly owed by defendant as the sublessee through 2008 for the remainder of the sublease term, which include more than $600,000 in rents, more than $60,000 in real estate taxes, and the costs of maintenance and insurance. Plaintiff alleges that defendant has breached the sublease by failing to pay these financial obligations, and by selling the adjacent building without requiring the purchasers to assume the obligations of the sublease.

Now before the Court is plaintiff's motion for partial summary judgment on the issue of liability. The parties agree that there exists no dispute of material fact pertinent to liability, and that Missouri law governs. The Court is called upon to determine an issue of law concerning defendant's acquisition of the leasehold interest upon foreclosure, pursuant to the Trustee's Deed. The Court's interpretation of the pertinent Missouri law is as follows.

█ On the undisputed facts, defendant is not a sub-sublessee, for the reason that Gilroy's entire interest in the leasehold was extinguished by the foreclosure, and no reversionary interest was retained. *See, e.g., Siragusa v. Park,* 913 S.W.2d 915, 917 (Mo.App.1996). A sublease and an assignment confer different rights and responsibilities. An assignee of a lease

acquires no privity of contract with the lessor unless the assignment expressly states that the assignee assumes all the rights and obligations set out in the lease. *South Lakeview Plaza v. Citizens National Bank of Greater St. Louis,* 703 S.W.2d 84, 86 (Mo.App.1985). In the absence of such language, an assignee has only privity of estate with the lessor, pursuant to which the assignee and the lessor are bound only to those covenants which are said to "run with the land," such as the payment of rent. *Siragusa,* 913 S.W.2d at 917; *see also Employees Consumer Organization, Inc. v. Gorman's, Inc.,* 395 S.W.2d 162, 166 (Mo.1965); *Bauer v. White,* 225 Mo.App. 270, 29 S.W.2d 176, 179, 180 (1930).

■ Language *in the original lease* to the effect that assignees are bound to all covenants of the lease is not effective to bind the assignee; instead, such language must appear in the assignment itself. *South Lakeview Plaza,* 703 S.W.2d at 86 ["The assignee becomes contractually bound upon acceptance of the assignment 'subject to all covenants in the lease' when the assignment contains this express language."]; *Dean v. Lee,* 227 Mo.App. 206, 52 S.W.2d 426, 429 (1932) ["The obligation of the lease that each assignee bind himself to perform all covenants of the lease and to be bound by them, was a contractual obligation which defendant did not assume in the assignment to him and he is not bound thereby."].

■ The instant case, however, does not involve a direct assignment by the lessee (in this case, a sublessee), but a situation in which the sublessee's mortgagee, upon the sublessee's default of the mortgage against which the leasehold interest was pledged, purchases the leasehold at the foreclosure sale. Nonetheless, defendant's purchase of the leasehold is to be analyzed as an assignment:

Liability of a leasehold mortgagee for the obligations of the tenant under a mortgaged lease is based on the same rules that govern the liability of an assignee of a lease ... A leasehold mortgagee who forecloses and thereby acquires title to the mortgaged lease becomes thereby an assignee of the lease and liable thereby through privity of estate for all tenant obligations accruing during his ownership of the lease.

*Friedman on Leases,* § 7.802, pp. 463–64 (4th ed.1997). This conclusion is expressly supported in the Missouri case law: "The mortgagee does not stand in the position of assignee until a mortgagee enters into possession of the leasehold estate." *South Lakeview Plaza,* 703 S.W.2d at 86.

As earlier explained, an assignment which expressly assumes all obligations of the lease creates privity of contract as well as privity of estate. If the deed by which defendant obtained the leasehold interest qualifies as such an assignment, defendant remains liable for all obligations of the lease through the end of its term, and plaintiff is entitled to summary judgment as to liability. "A person who receives an absolute assignment of a lease ... is liable to the lessors for the rent, whether he enters into possession or not." *South Lakeview Plaza,* 703 S.W.2d at 86.

Even if the "assignment" to defendant does not qualify as absolute, and the foreclosure purchase created only privity of estate between the parties, the Court concludes that defendant's liability continues.

Liability based on privity of estate continues only so long as privity of estate continues. An assignee may relieve himself of this liability at any time by in turn assigning to another ... But an actual assignment is apparently necessary, rather than abandonment alone.

*Friedman* at § 7.501c1, pp. 387–88. Defendant cites to the contrary several cases from other jurisdictions, including *Chicago Title and Trust Company v. GTE Directories Corporation,* 1995 WL 584419, *5 (N.D.Il.1995). Applying Illinois law, *Chicago Title* holds that "an assignee terminates privity of estate by vacating the premises even if it has not reassigned the lease." *Chicago Title*'s holding is unpersuasive and contrary to Missouri case law,

as well as the general principle stated by Friedman. That Missouri law requires an actual assignment is borne out by *McMorris v. Keeley Real Estate Co.*, 147 Mo.App. 667, 127 S.W. 411, 413 (1910), and *Bauer*, 29 S.W.2d at 180, as well as by cases reflecting that privity of estate is based not upon actual possession but right of possession. *See, e.g., Eighme v. Indiana*, 213 Mo.App. 342, 249 S.W. 717, 718 (1923), and *B. Roth Tool Co. v. Champ Spring Co.*, 93 Mo.App. 530, 67 S.W. 967, 969 (1902); *see also Friedman* at § 7.501c1, p. 386 ["It is not necessary for the assignee to take possession. It is sufficient that he have a right to possession."]

Defendant does not dispute that it "has not conveyed or transferred the leasehold interest of Gilroy acquired by defendant at the foreclosure sale in 1991 to any other person or entity and plaintiff has not consented to any such transfer." Pltf. Statement of Uncontroverted Facts [Doc. # 36], ¶ 14; admitted in Def. Response [Doc. # 37], ¶ 14. Ownership of the leasehold, and therefore privity of estate, remains with defendant. To hold otherwise would be to allow abandonment of the premises to extinguish the existence of a leasehold interest which by its terms continues for a term of 40 years to 2008.

Defendant presents no argument that the lessee's obligations for rent, real estate taxes, maintenance, and insurance are not the types of obligations which "touch and concern" the land and so are said to "run with the land." The Court concludes as a matter of law that defendant remains liable for these obligations, and has anticipatorily breached the sublease. Defendant does not dispute that, by letter dated December 29, 1997, it notified plaintiff of its belief that it had no further obligation under the lease and purported to terminate its tenancy. Pltf. Statement of Uncontroverted Facts [Doc. # 36], ¶ 12; admitted in Def. Response [Doc. # 37], ¶ 12. "Missouri ... recognizes the concept of anticipatory breach by repudiation," in which " '[a] party to a contract repudiates that contract by manifesting, by words or conduct, a "positive intention not to per-

form." ' " *Inauen Packaging Equipment Corporation v. Integrated Industrial Services, Inc.*, 970 S.W.2d 360, 367 (Mo.App. 1998), *quoting Carmel v. Dieckmann*, 617 S.W.2d 459, 460 (Mo.App.1981) (internal citation omitted). The doctrine has been extended to application in the lease context. *See Adkins v. Hobson & Son, Inc.*, 666 S.W.2d 951, 954–55 (Mo.App.1984), and its discussion of *Hawkinson v. Johnston*, 122 F.2d 724 (8th Cir.1941).

Plaintiff's first amended complaint is pled in three counts, which plaintiff characterizes as follows. *See* Pltf. Motion for Partial Summary Judgment [Doc. # 33], p. 6. Count I seeks recovery of unpaid rent through November 1998, the date of the filing of the first amended complaint. Count II seeks "all rentals due through the remaining term of the sublease on the grounds that defendant breached the sublease by failing to require that its purchaser of 210 N. Tucker assume the obligations under the sublease." *Id.* This theory for recovery is an alternative to anticipatory breach, has not been urged in the instant motion, and would appear at this stage to be redundant in that it is capable only of eliciting damages duplicative of those for defendant's anticipatory breach by repudiation. Count III is characterized as asserting "defendant's anticipatory breach and repudiation of its obligation to pay rentals, taxes, etc. through the remaining term of the sublease." *Id.* Counts I and III therefore appear to be those upon which plaintiff is entitled to summary judgment as to liability based on the Court's determinations. If the case proceeds to final disposition along these lines, Count II will be dismissed.

Remaining for decision are plaintiff's damages under Counts I and III. The matter is set for jury trial on the docket commencing September 20, 1999. Concerning the appropriate measure of damages for anticipatory breach of a long-term lease, the parties are referred to *Adkins*, 666 S.W.2d at 955–56, and *Hawkinson*, 122 F.2d at 727, and their discussion of dam-

age computations reducing the rental due under the lease by the fair rental value of the property for that period, discounted to present value. The parties are directed to employ their best efforts to settle or stipulate to the applicable damages, if necessary preserving defendant's right of appeal of the Court's legal determination as to liability.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for partial summary judgment as to liability [Doc. # 33] is granted.